IN THE UNITED STATES DISTRICT COURT FOR RECEIVED
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION      2017 AUG 22 ⊃ 4: 45

|  |  |  |
|---|---|---|
| CORAL RIDGE MINISTRIES MEDIA, INC.,<br>d/b/a D. James Kennedy Ministries | ) | DEBRA P. HACKETT. CLK<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT ALA |
|  | ) |  |
| Plaintiff, | ) | Civil Action No.: *2:17-cv-566-MHT* |
|  | p) |  |
| v. | ) |  |
|  | ) |  |
| AMAZON.COM, INC.,<br>AMAZONSMILE FOUNDATION, INC.,<br>SOUTHERN POVERTY LAW CENTER, INC.,<br>and GUIDESTAR USA, INC., | ) ) ) ) | JURY TRIAL REQUESTED |
|  | ) |  |
| Defendants. | ) |  |

## COMPLAINT

CORAL RIDGE MINISTRIES MEDIA, INC., d/b/a D. James Kennedy Ministries, a Florida not for profit corporation, by and through its attorney, David C. Gibbs III, for its complaint against Amazon.com, Inc., AmazonSmile Foundation, Inc., Southern Poverty Law Center, Inc., and GuideStar USA, Inc., states as follows:

## INTRODUCTION

This is a civil action pursuant to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, for religious discrimination against the Ministry in a public accommodation; pursuant to the Lanham Act, specifically Title 15 U.S.C. § 1125, for trafficking in false or misleading descriptions of the services offered under the Ministry's trademarked name; and for defamation pursuant to Alabama common law arising from the publication and distribution of information that libels the Ministry's reputation and subjects the Ministry to disgrace, ridicule, odium, and contempt in the estimation of the public.

1

## JURISDICTION

1. This action arises under federal law, particularly Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, and the Lanham Act, 15 U.S.C. § 1051 et seq. This action also contains counts originating in the common law of the State of Alabama concerning defamation. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the defamation claims pursuant to 28 U.S.C. § 1367.

2. Venue in this action is proper in the Montgomery Division of the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b), because Defendant SPLC's primary place of business and registered office are located in Montgomery, Alabama. Further, on information and belief, a substantial part of the events or omissions giving rise to these claims arose in Montgomery, Alabama.

## THE PARTIES

3. This suit is brought by Plaintiff, Coral Ridge Ministries Media, Inc., d/b/a D. James Kennedy Ministries ("Ministry"), a Florida not-for-profit corporation, with its primary place of business at 5555 North Federal Highway, Suite 1, Fort Lauderdale, Florida 33308. The Ministry may be served at 5555 North Federal Highway, Suite 1, Fort Lauderdale, Florida 33308.

4. Defendant Amazon.com, Inc. ("Amazon.com") is a Delaware corporation. Amazon.com is an American electronic commerce and cloud computing company, and is the largest Internet-based retailer in the world by total sales and market capitalization. Amazon.com's business includes video downloads/streaming, MP3 downloads/streaming, and audiobook downloads/streaming. On information and

2

belief, Amazon.com's principal place of business is 410 Terry Avenue North, Seattle, Washington 98109. Amazon.com's registered agent for service in Delaware is Corporation Service Company at 251 Little Farms Drive, Wilmington, Delaware 19808.

5. Defendant AmazonSmile Foundation, Inc. ("AmazonSmile") is a Delaware tax-exempt corporation. On information and belief, AmazonSmile's business includes video downloads/streaming, MP3 downloads/streaming, and audiobook downloads/streaming. On information and belief, AmazonSmile's principal place of business is 410 Terry Avenue North, Seattle, Washington 98109. AmazonSmile's registered agent for service in Delaware is Corporation Service Company and can be served at 251 Little Farms Drive, Wilmington, Delaware 19808.

6. Defendant Southern Poverty Law Center, Inc. ("SPLC") is an Alabama non-profit corporation with its principal place of business at 400 Washington Avenue, Montgomery, Alabama 36104. SPLC can be served at 400 Washington Avenue, Montgomery, Alabama 36104.

7. Defendant GuideStar USA, Inc. ("GuideStar") is a Delaware tax-exempt corporation. GuideStar's principal place of business is 4801 Courthouse Street, Williamsburg, Virginia 23188. GuideStar can be served at Capitol Services, Inc., 1675 S. State Street, Suite B, Dover, Delaware 19901.

## GENERAL FACTUAL STATEMENTS
## BACKGROUND

8. Dennis James Kennedy was an American pastor, evangelist, and Christian broadcaster. He founded the Coral Ridge Presbyterian Church in Fort Lauderdale,

3

Florida, where he was Senior Pastor from 1960 until his death ten years ago on

September 5, 2007. Dr. Kennedy also founded Evangelism Explosion International,

Coral Ridge Ministries (known as D. James Kennedy Ministries since 2009), the

Westminster Academy in Fort Lauderdale, the Knox Theological Seminary, and

the Center for Reclaiming America for Christ.

9.  In 1974, Dr. Kennedy founded Coral Ridge Ministries, which produced his weekly

television program, *The Coral Ridge Hour* (now "Truths that Transform"), which

was carried on television networks and was syndicated on numerous other stations

with a peak audience of three million viewers in 200 countries. Dr. Kennedy also

had a daily radio program, *Truths That Transform* (1984-2012).

10. The Ministry's Bylaws declare its vision statement: "The corporation seeks to

communicate the Gospel of Jesus Christ, the supremacy of His Lordship, and a

biblically informed view of the world, using all available media, so that Jesus Christ

would be known throughout all of the Earth and that everywhere He might be

trusted, loved, and served."

11. The Ministry's Bylaws also declare the Ministry's mission: "The mission of the

corporation is:

(a) To proclaim the good news of the Gospel throughout the Earth,

introducing people to the Person and the redeeming work of Jesus Christ;

(b) To teach and nurture His followers, helping them to grow in

grace and in service to Christ and His church;

(c) To equip and encourage believers to live out their faith, making

a difference in the world around them; and

4

(d) To defend religious liberty, by helping believers understand America's Christian heritage and by motivating them to lovingly engage the culture with the heart and mind of Christ.

12. The message, vision, and purpose of the Ministry have not changed since the death of Dr. Kennedy on September 5, 2007. In fact, the message of the Ministry cannot have changed since Dr. Kennedy's death, because much of the Ministry's current function is to continue to broadcast the messages contained in Dr. Kennedy's *Truths That Transform* television programs.

13. More than the fact that the Ministry's message has not changed since the time of Dr. Kennedy's death, the fundamental rock upon which the Ministry is built, the Gospel of Jesus Christ, has remained unchanged for almost two thousand years.

14. It is this Gospel of Jesus Christ that was a fundamental building block of the United States. In fact, if we view "American life as expressed by its laws, its business, its customs and its society, we find everywhere a clear recognition of the same truth. Among other matters note the following: The form of oath universally prevailing, concluding with an appeal to the Almighty; the custom of opening sessions of all deliberative bodies and most conventions with prayer; the prefatory words of all wills, 'In the name of God, amen;' the laws respecting the observance of the Sabbath, with the general cessation of all secular business, and the closing of courts, legislatures, and other similar public assemblies on that day; the churches and church organizations which abound in every city, town and hamlet; the multitude of charitable organizations existing every where under Christian auspices; the gigantic missionary associations, with general support, and aiming to establish

Christian missions in every quarter of the globe. These, and many other matters which might be noticed, add a volume of unofficial declarations to the mass of organic utterances that **this is a Christian nation.**" *Church of the Holy Trinity v. United States*, 143 U.S. 457, 471, 12 S. Ct. 511, 516, 36 L. Ed. 226, 232, 1892 U.S. LEXIS 2036, *27-28 (U.S. Feb. 29, 1892)(emphasis added).

15. The mission of the Ministry is to proclaim the Gospel upon which this Nation was founded, to teach and nurture the followers of Jesus, to equip and encourage believers, and to defend religious liberty.

16. Nowhere in the purpose or action of the Ministry is there HATE or any room for HATE.

## DEFAMATION AND DISCRIMINATION AGAINST THE MINISTRY ON THE BASIS OF ITS RELIGIOUS BELIEFS

17. As previously stated, fundamental to the operation of the Ministry is the broadcast of Dr. Kennedy's *Truths that Transform* programs. Since the purchase of broadcast television time is expensive, fundraising is also fundamental to the operation of the Ministry.

18. Because fundraising is important to the continuing operation of the Ministry, its leadership is always receptive to appropriate new fundraising opportunities.

19. In late 2016, the Ministry's leadership became aware of a program called the AmazonSmile program, which is sponsored by Defendant Amazon.com and its affiliate, AmazonSmile.

20. The website for the AmazonSmile program, https://org.amazon.com, describes the AmazonSmile program as follows:

6

"Customers shop. Amazon gives.

Amazon donates 0.5% of the price of eligible AmazonSmile

Purchases to the charitable organizations selected by our customers.

Register to receive donations generated by your organization's

AmazonSmile supporters."

21. AmazonSmile is further described on its website, https://org.amazon.com, in the

section titled, "About AmazonSmile":

**"What is AmazonSmile?**
AmazonSmile is a website operated by Amazon that lets customers enjoy
the same wide selection of products, low prices, and convenient shopping
features as on Amazon.com. The difference is that when customers shop on
AmazonSmile (smile.amazon.com), the AmazonSmile Foundation will
donate 0.5% of the price of eligible purchases to the charitable organizations
selected by customers."

22. The eligibility requirements for the AmazonSmile program are also described in

this section of the website:

**What are the eligibility requirements for charitable organizations to**
**participate?**

Organizations must be registered and in good standing with the IRS as a
501(c)(3) to be eligible to participate. Organizations must be public
charitable organizations (not private foundations) and may not be
supporting organizations, unless identified specifically as a Type I, Type II,
or functionally integrated Type III supporting organization. Eligible
charitable organizations must also be located in one of the 50 U.S. states or
the District of Columbia. Organizations that engage in, support, encourage,
or promote intolerance, hate, terrorism, violence, money laundering, or
other illegal activities are not eligible to participate. Amazon relies on the
US Office of Foreign Assets Control and the Southern Poverty Law Center
to determine which registered charities fall into these groups. Charitable
organizations must also adhere to the AmazonSmile Participation
Agreement to maintain eligibility. Charitable organizations may choose not

7

to participate in AmazonSmile at any time. Although we aim to include only charitable organizations that are in good standing and do not engage in any of the activities described above, we cannot guarantee the good standing and/or conduct of any charitable organization. For complete details, see the AmazonSmile Participation Agreement.

23. The Ministry originally received a determination letter from the Internal Revenue Service declaring it tax exempt under section 501(c)(3) of the Internal Revenue Code in August of 1994. The Ministry's determination letter is still in full force and effect. Therefore, the Ministry is "registered and in good standing with the IRS."

24. The Ministry is not a private foundation, but rather, is classified as a public charity.

25. The Ministry is not classified as a "supporting organization."

26. The Ministry is located in Fort Lauderdale, Florida, within one of the 50 U.S. states.

27. The Ministry does not engage in, support, encourage, or promote intolerance, hate, terrorism, violence, money laundering, or other illegal activities.

28. As previously stated, in order to be eligible to receive the 0.5% of the purchase price of eligible purchases that AmazonSmile donates to charities selected by its customers, a charity must register with AmazonSmile.

29. On or about January 3, 2017, a Ministry employee acting at the direction of the Ministry's leadership, attempted to register the Ministry in the AmazonSmile program.

30. Despite repeatedly trying to register the Ministry for the AmazonSmile program, the employee had no success and ultimately contacted AmazonSmile support for assistance.

31. After several further failed attempts to register the Ministry, the employee was advised by AmazonSmile support that certain categories of organizations are not

eligible to participate in AmazonSmile. "We rely on the Southern Poverty Law Center to determine which charities are in ineligible categories."

32. As AmazonSmile's website, https://org.amazon.com, indicates, AmazonSmile relies on the US Office of Foreign Asset Control and the Southern Poverty Law Center to determine which charities fall into the category of organizations "that engage in, support, encourage, or promote intolerance, hate, terrorism, violence, money laundering, or other illegal activities . . ."

33. The Ministry has never had any difficulty with the U.S. Office of Foreign Asset Control and is not aware that it has ever been investigated by that agency.

34. Whereas, the Ministry is aware that the SPLC has placed:

"D. James Kennedy Ministries
(formerly Truth in Action)
Fort Lauderdale, Florida
ANTI-LGBT"

On SPLC's "HATE MAP" at:

https://www.splcenter.org/hatemap?gclid=CjwKCAjwzYDMBRA1EiwAwCv6Jt
_zog66wpxzJdqZNP5sfDCOxiEKdUE_BBoOrR8cqMz4yzpEddughoCYk8QAv
D_BwE.

35. As AmazonSmile support advised, "the Southern Poverty Law Center lists Coral Ridge Ministries Media, Inc. in an ineligible category." AmazonSmile support identified this as the reason the Ministry was denied eligibility for the AmazonSmile program.

36. Elsewhere in AmazonSmile support's communication with the Ministry employee, AmazonSmile support advised: ". . . we rely on GuideStar to send us information from the IRS . . . I would expect that they [GuideStar] will include your

9

organization's information in their automated feed to AmazonSmile at the end of January or February."

37. On June 15, 2017, a "blog" on GuideStar's website, https://trust.guidestar.org/ guidestar-and-data-from-the-splc, stated:

**"GuideStar and Data from the SPLC**

by **Jacob Harold**, on 6/15/17 8:00 AM

. . .

GuideStar's database has information on 1,684,038 active nonprofits. Recently, we added new information to the profiles of 46 of these organizations: the fact that they had been designated as hate groups by the Southern Poverty Law Center (SPLC). That action has earned us both celebration and criticism. So I wanted to take a moment to share the thinking behind our choice to add this new data source . . . ."

38. Based on AmazonSmile support's statement, AmazonSmile receives "automated feeds" of information from GuideStar, apparently at the end of every month.

39. For those organizations that have been placed on SPLC's "Hate Map," that monthly feed from GuideStar now includes "the fact that they had been designated as hate groups by the Southern Poverty Law Center (SPLC)."

40. The basis for SPLC's declaration that the Ministry is a hate group is that the Ministry espouses and supports Biblical morals and principles concerning human sexuality. It was on these Biblical principles that this Nation was founded and built.

41. As the U.S. Supreme Court stated in 2015: "Many who deem same-sex marriage to be wrong reach that conclusion based on decent and honorable religious or philosophical premises, and neither they nor their beliefs are disparaged here." Therefore, as a matter of law, religious based opposition to same-sex marriage and the homosexual agenda is not hate speech, but rather is a position that the U.S. Supreme Court has labeled "decent and honorable." *Obergefell v. Hodges*, 135 S.

Ct. 2584, 2602, 192 L. Ed. 2d 609, 629, 2015 U.S. LEXIS 4250, *37, 83 U.S.L.W. 4592, 99 Empl. Prac. Dec. (CCH) P45,341, 115 A.F.T.R.2d (RIA) 2309, 25 Fla. L. Weekly Fed. S 472 (U.S. June 26, 2015).

42. Based on GuideStar's and SPLC's statements, they have conspired to publish written information in interstate commerce that subjects the Ministry to disgrace, ridicule, odium, and contempt, by declaring the Ministry a hate group. Under Alabama law, this conduct constitutes defamation, specifically libel per se.

43. Upon information and belief, the defamatory information published to third parties by SPLC and republished to third parties by GuideStar originated at SPLC's principal place of business in Montgomery, Alabama.

44. The information that SPLC published concerning the Ministry is not merely opinion, but rather, is intended as factual information. It is SPLC's intent that the people who receive the information that SPLC publishes about the Ministry will rely on SPLC's information as fact and will base their charitable giving decisions on that information.

45. On information and belief, when SPLC and GuideStar transmit SPLC's defamatory information concerning the Ministry, and other similar charities, to AmazonSmile, and other similar end users, the information does not include supporting data that explains the basis of SPLC's decision. The information transmitted does not allow end users to make their own determination regarding whether SPLC's determinations were correct or not. Rather, the information transmitted is binary in nature. It is something upon which a computer program, like AmazonSmile's software, can act. The charity in question is either a hate group or not. The charity

11

is eligible or ineligible. SPLC's determinations are designed to be treated as fact and business decisions are made based on those determinations without further evaluation or discussion.

46. Based on GuideStar's own statements, it knowingly accepts defamatory information from the SPLC regarding the Ministry and knowingly, intentionally, and purposefully republishes that defamatory information with the intent that the people who receive the republished SPLC information from GuideStar will rely on that information as fact for the purpose of making their charitable giving decisions.

47. On or about January 3, 2017, AmazonSmile relied on the defamation originally published by SPLC and republished by GuideStar concerning the Ministry to exclude the Ministry from the AmazonSmile program. This information that was published by SPLC and republished by GuideStar constitutes libel per se under Alabama law, because it subjects the Ministry to disgrace, ridicule, odium, and contempt in the estimation of the public.

48. As a result of the Ministry's exclusion from the AmazonSmile program, it is not able to receive contributions that it would otherwise be eligible for through that program.

49. Upon information and belief, SPLC and GuideStar both received financial compensation for publication and republication, respectively, of defamatory information about the Ministry and other charitable organizations.

## CAUSES OF ACTION

### COUNTS I & II - DEFAMATION – LIBEL PER SE
### (AGAINST SPLC AND GUIDESTAR)

12

## COUNT I – DEFAMATION – LIBEL PER SE
### (AGAINST SPLC)

50. The Ministry incorporates paragraphs 1 through 49, as if fully set out herein.

51. In Alabama, the elements of defamation are:

> (1) a false *and* defamatory statement concerning the plaintiff;
> (2) an unprivileged communication of that statement to a third party;
> (3) fault amounting at least to negligence on the part of the defendant; and
> (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

*McCaig v. Talladega Pub. Co.*, 544 So. 2d 875, 877, 1989 Ala. LEXIS 178, *5, 16 Media L. Rep. 1946 (Ala. Mar. 10, 1989).

52. A communication is considered defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Harris v. School Annual Publ'g Co., 466 So. 2d 963, 964 (Ala. 1985).*

53. The Ministry is not a hate group. Rather, the Ministry promotes and advances the Gospel of Jesus Christ, which promotes love of all people, including those who hate you.

54. SPLC's publication of its HATE MAP at:

> https://www.splcenter.org/hatemap?gclid=CjwKCAjwzYDMBRA1EiwAwCv6Jt_zog66wpxzJdqZNP5sfDCOxiEKdUE_BBoOrR8cqMz4yzpEddughoCYk8QAvD_BwE,

which states: "917 Hate Groups are currently operating in the US."
          "Track them Below with our Hate Map."

And then lists:

"D. James Kennedy Ministries
 (formerly Truth in Action)
 Fort Lauderdale, Florida
 ANTI-LGBT"

13

on that Hate Map "tends to harm the reputation of [the Ministry] as to lower [it] in the estimation of the community or to deter third persons from associating or dealing with him." In fact, SPLC's very purpose for placing the Ministry on the Hate Map was to harm the reputation of the Ministry as to lower it in the estimation of the community and to deter third persons from associating or dealing with the Ministry. Specifically, the SPLC was attempting to dissuade people and organizations from donating to the Ministry.

55. In addition to the Hate Map, on information and belief, SPLC transmits information to GuideStar through some means to identify the Ministry, and other charities, as "Hate Groups" for the purpose of allowing GuideStar to include SPLC's "Hate Group" information in "automated feeds" that GuideStar, in turn, provides to its end users. The transmission of this information by SPLC to GuideStar, for inclusion in its automated feeds and other republications "tends to harm the reputation of [the Ministry] as to lower [it] in the estimation of the community or to deter third persons from associating or dealing with [it]." In fact, SPLC's very purpose for including information about the Ministry in its transmissions to GuideStar is to harm the reputation of the Ministry as to lower it in the estimation of the community and to deter third persons from associating or dealing with the Ministry. Specifically, to dissuade people and organizations from donating to the Ministry. These transmissions of information from SPLC to GuideStar for the purpose of indicating "the fact that [the Ministry or other charity] had been designated as Hate Groups by the Southern Poverty Law Center (SPLC)" will hereinafter be identified as "SPLC Transmissions."

14

56. The SPLC knows that its publication of its claims that the Ministry is a Hate Group both in the Hate Map and in the SPLC Transmissions are false and that these publications defame the Ministry. The SPLC intended the Hate Map and SPLC Transmissions to be statements of fact, not statements of opinion.

57. The SPLC's publication of its Hate Map and the SPLC Transmissions were not and are not privileged communications to third parties.

58. For the reasons cited above, the inclusion of the Ministry on SPLC's Hate Map and the SPLC Transmissions are actionable as defamation.

59. Both the SPLC's Hate Map and the SPLC Transmissions were published to third parties, other than the Defendants. SPLC publishes its Hate Map as an element of its fundraising activity. As such, the Hate Map is seen by a multitude of the SPLC's supporters. The information contained in the SPLC's Transmissions is intended to be received by GuideStar with the intent that GuideStar will include this information in its monthly automated feeds and other republications that are received by third parties.

60. SPLC acted knowingly, intentionally, and with actual malice in publishing the Hate Map that included the Ministry and in publishing the SPLC Transmissions to GuideStar that included the Ministry. SPLC's conduct in making these publications was beyond the reckless disregard for the truth standard required by Alabama law for punitive damages.

61. In Alabama, written language (including Internet postings and electronic transmissions) that includes "language expos[ing] the plaintiff to public ridicule or contempt" is actionable as libel per se.

15

62. Because these SPLC publications constitute libel per se, the Ministry is entitled to presumed damages.

63. The SPLC's publication of its Hate Map and the SPLC Transmissions directly tend to prejudice the Plaintiff in the operation of its ministry, i.e. its profession.

64. Because the SPLC's Hate Map and SPLC Transmissions identify the Ministry as: "D. James Kennedy Ministries," which is the Ministry's registered fictitious name and its trademark, there is no doubt that the Hate Map and SPLC Transmissions were published with respect to the Ministry and not some other party.

65. In Alabama, common-law malice may be shown by evidence of hostility, rivalry, the violence of the language, the mode and extent of publication, or by proof of "the recklessness of the publication and prior information regarding its falsity." *Johnson Publishing Co. v. Davis*, 271 Ala. 4gG74, 487, 124 So. 2d 441, 450, 1960 Ala. LEXIS 517, *32 (Ala. 1960).

66. Because the SPLC previously published material that evidenced hostility toward the Ministry, because of the extreme "Hate Group" language used by the SPLC, because of the extensive publication of the Hate Map through the use of the Internet and the SPLC Transmissions, and because the SPLC's conduct in making these publications was beyond reckless for the falsity of the information, the SPLC's conduct in publishing the Hate Map and SPLC Transmissions constitutes common-law malice.

67. Code of Alabama § 6-5-186 provides: "Vindictive or punitive damages shall not be recovered in any action for libel on account of any publication unless (1) it shall be proved that the publication was made by the defendant with knowledge that the

matter published was false, or with reckless disregard of whether it was false or not, and (2) it shall be proved that five days before the commencement of the action the plaintiff shall have made written demand upon the defendant for a public retraction of the charge or matter published; and the defendant shall have failed or refused to publish within five days, in as prominent and public a place or manner as the charge or matter published occupied, a full and fair retraction of such charge or matter."

68. SPLC's publication of its Hate Map and SPLC Transmissions to GuideStar were made with knowledge that the matter published was false, or with reckless disregard of whether it was false or not. A demand letter was served on SPLC on August 7, 2017, more than five days before the commencement of this action, demanding a public retraction of SPLC's Hate Map and the SPLC transmissions. SPLC has failed to publish such a retraction.

69. Because SPLC's publication of its Hate Map and the SPLC Transmissions to GuideStar were made with knowledge that the matter was false, or with reckless disregard of whether it was false or not, and because the SPLC has refused to retract these statements, the Ministry is entitled to punitive damages.

70. On or about January 3, 2017, the Ministry suffered special damages in its exclusion from the AmazonSmile program as a result of SPLC's publication of the Hate Map and the SPLC Transmissions. Additionally, the Ministry suffered the loss of donors due to these publications. The Ministry seeks compensatory damages for these injuries.

71. For the reasons stated above, the Ministry is entitled to damages for the special harms listed above and for damages irrespective of special harms, because the

SPLC's publication of its Hate Map and the SPLC Transmissions constitute libel per se. Additionally, the Ministry is entitled to punitive damages, because the SPLC published the Hate Map and SPLC Transmissions with knowledge that the matter published was false, or with reckless disregard of whether the matter was false or not.

WHEREFORE, Ministry respectfully prays for the relief against SPLC, as set forth in its prayer for relief.

## COUNT II – DEFAMATION – LIBEL PER SE
### (AGAINST GUIDESTAR)

72. The Ministry incorporates paragraphs 1 through 49, as if fully set out herein.

73. In Alabama, the elements of defamation are:

   (1) a false *and* defamatory statement concerning the plaintiff;
   (2) an unprivileged communication of that statement to a third party;
   (3) fault amounting at least to negligence on the part of the defendant; and
   (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

   *McCaig v. Talladega Pub. Co.*, 544 So. 2d 875, 877, 1989 Ala. LEXIS 178, *5, 16 Media L. Rep. 1946 (Ala. Mar. 10, 1989).

74. A communication is considered defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Harris v. School Annual Publ'g Co., 466 So. 2d 963, 964 (Ala. 1985).*

75. The Ministry is not a Hate Group. Rather, the Ministry promotes and advances the Gospel of Jesus Christ, which promotes love of all people, including those who hate you.

18

76. GuideStar publicly stated that it intentionally published "the fact that [certain charities] had been designated as Hate Groups by the Southern Poverty Law Center (SPLC)." (See https://trust.guidestar.org/guidestar-and-data-from-the-splc.)

77. Republication of defamatory material in Alabama is actionable as defamation. *Age-Herald Publ'g Co. v. Waterman*, 188 Ala. 272, 66 So. 16 (1913*); Hollander v. Nichols*, 19 So. 3d 184 (Ala. 2009).

78. The Ministry is among the charities designated as a Hate Group by the SPLC. GuideStar knowingly and intentionally republished the SPLC's designation of the Ministry as a Hate Group to third parties.

79. GuideStar publishes "automated feeds" of information on at least a monthly basis to certain end users of GuideStar's information. These GuideStar automated feeds and other GuideStar publications included the SPLC Hate Group designation of the Ministry. The republication of this information by GuideStar to third parties "tends to harm the reputation of [the Ministry] as to lower [it] in the estimation of the community or to deter third persons from associating or dealing with [it]." In fact, GuideStar's very purpose for including the SPLC's Hate Group designation of the Ministry in its automated feeds and other publications was to harm the reputation of the Ministry as to lower it in the estimation of the community and to deter third persons from associating or dealing with the Ministry. Specifically, to dissuade people and organizations from donating to the Ministry.

80. GuideStar knew that it was republishing false information concerning the Ministry being a Hate Group, both in its automated feeds and in its other publications. GuideStar further knew that these publications would defame the Ministry.

19

GuideStar intended these automated feeds and other publications to be statements of fact, not statements of opinion. GuideStar disseminated this information to third parties expecting that third parties would rely on this information as fact and that third parties would rely on this "factual information" for their charitable giving decisions.

81. GuideStar's publication of SPLC's Hate Group designation of the Ministry were not and are not privileged communications to third parties.

82. For the reasons cited above, the inclusion of SPLC's Hate Group designation in GuideStar's automated feeds and other publications are actionable as defamation.

83. GuideStar acted knowingly, intentionally, and with actual malice in publishing SPLC's Hate Group designation of the Ministry to third parties through its automated feeds and other publications. GuideStar's conduct in making these publications was beyond the reckless disregard for the truth standard required by Alabama law for punitive damages.

84. In Alabama, written language (including Internet postings and electronic transmissions) that includes language exposing the plaintiff to public ridicule or contempt is actionable as libel per se.

85. Because these GuideStar's publications constitute libel per se, the Ministry is entitled to presumed damages.

86. GuideStar's publication of its automated feeds and other publications that included SPLC's Hate Group designation of the Ministry tend to prejudice the Plaintiff in the operation of its ministry, i.e. its profession.

87. Because GuideStar's automated feeds and other publications identified the Ministry as: "D. James Kennedy Ministries," which is the Ministry's registered fictitious name and its trademark, there is no doubt that GuideStar's automated feeds and other publications were published with respect to the Ministry and not some other party.

88. Code of Alabama § 6-5-186 provides: "Vindictive or punitive damages shall not be recovered in any action for libel on account of any publication unless (1) it shall be proved that the publication was made by the defendant with knowledge that the matter published was false, or with reckless disregard of whether it was false or not, and (2) it shall be proved that five days before the commencement of the action the plaintiff shall have made written demand upon the defendant for a public retraction of the charge or matter published; and the defendant shall have failed or refused to publish within five days, in as prominent and public a place or manner as the charge or matter published occupied, a full and fair retraction of such charge or matter."

89. GuideStar's publication of its automated feeds and other publications that included SPLC's Hate Group designation of the Ministry were made with knowledge that the matter published was false, or with reckless disregard of whether it was false or not. A demand letter was served on GuideStar on August 7, 2017, more than five days before the commencement of this action, demanding a public retraction of GuideStar's automated feeds and other publications that included SPLC's Hate Group designations. GuideStar has failed to publish such a retraction.

90. Because GuideStar's publication of its automated feeds and other publications that included SPLC's Hate Group designations were made with knowledge that the

matter was false, or with reckless disregard of whether it was false or not, and because GuideStar has refused to retract these statements, the Ministry is entitled to punitive damages.

91. On or about January 3, 2017, the Ministry suffered special damages in its exclusion from the AmazonSmile program, as a result of GuideStar's publication of SPLC's Hate Group designation information, which GuideStar published to AmazonSmile. Additionally, the Ministry suffered a loss of donors due to GuideStar's republication of SPLC's Hate Group designation information. The Ministry seeks compensatory damages for these injuries.

92. For the reasons stated above, the Ministry is entitled to damages for the special harms listed above and for damages irrespective of special harms, because GuideStar's republication of SPLC's Hate Group designation constitute libel per se. Additionally, the Ministry is entitled to punitive damages, because GuideStar republished SPLC's Hate Group designation information with knowledge that the matter published was false, or with reckless disregard of whether the matter was false or not.

WHEREFORE, Ministry respectfully prays for the relief against GuideStar, as set forth in its prayer for relief.

## COUNT III – IV – VIOLATION OF 15 U.S.C. § 1125 OF THE LANHAM ACT
### (AGAINST SPLC & GUIDESTAR)

### COUNT III – VIOLATION OF 15 U.S.C. § 1125 OF THE LANHAM
### (AGAINST SPLC)

93. The Ministry incorporates paragraphs 1 through 49, as if fully set out herein.

94. The Lanham Act, specifically 15 U.S.C. § 1125, provides, in relevant part:

22

(a) Civil action.

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

> 15 USCS § 1125.

95. The name "D. JAMES KENNEDY MINISTRIES" is a registered trademark of Coral Ridge Ministries Media, Inc.

96. Specifically, the trademark "D. JAMES KENNEDY MINISTRIES" has been registered by Coral Ridge Ministries Media, Inc. under the following U.S. Patent and Trademark Office registrations: 4771968, 4798384, 4771967, 4771966, and 4771965.

97. SPLC published its HATE MAP at:

> https://www.splcenter.org/hatemap?gclid=CjwKCAjwzYDMBRA1EiwAwCv6Jt _zog66wpxzJdqZNP5sfDCOxiEKdUE_BBoOrR8cqMz4yzpEddughoCYk8QAv D_BwE,

> which states: "917 Hate Groups are currently operating in the US."
> "Track them Below with our Hate Map."

And then lists:

"D. James Kennedy Ministries
(formerly Truth in Action)
Fort Lauderdale, Florida
ANTI-LGBT."

98. Therefore, SPLC has identified the Ministry, using its registered trademark "D. James Kennedy Ministries," as a Hate Group and has published this Hate Group designation of the Ministry's registered trademark on its Internet site, www.splcenter.org.

99. The SPLC uses the website: www.splcenter.org for commercial activity, including fund raising, advertising, and promotion.

100. In fact, on the homepage of SPLC's website, www.splcenter.org, immediately above the tab for the SPLC's "HATE MAP," where the Ministry is listed as a Hate Group, are two tabs titled: "WAYS TO GIVE" and "DONATE."

101. The HATE MAP is a fundraising tool used by the SPLC to raise money.

102. The SPLC has misrepresented the Ministry as a Hate Group.

103. The Ministry is not a Hate Group. Rather, the Ministry promotes and advances the Gospel of Jesus Christ, which Gospel promotes love for all people, including those who hate you.

104. The Lanham Act, 15 U.S.C. § 1125(a)(1) provides that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name . . . or misleading description of fact, or false or misleading representation of fact, which . . . (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . .

24

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

105. Here, the SPLC, in connection with its goods and services, used words, terms, names, misleading descriptions of fact, and false and misleading representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliations, connections or the associations of the Ministry through the use of the Ministry's registered trademark. This use of the Ministry's registered trademark in combination with words, terms, names, misleading descriptions of fact and false, and misleading representations of fact identifying the Ministry as a Hate Group are likely to cause the public and potential supporters of the Ministry to be confused, mistaken, or deceived into believing that the Ministry is a Hate Group, or is affiliated with, connected with, and/or associated with Hate Groups, and that the Ministry's registered trademark represents a Hate Group, or is affiliated with, connected with and/or is associated with Hate Groups.

106. The Ministry believes that it has been damaged by these acts of the SPLC.

107. Therefore, the SPLC is liable in this civil action to the Ministry, pursuant to 15 U.S.C. § 1125 (a)(1)(A) of the Lanham Act.

108. The Lanham Act, 15 U.S.C. § 1125(a) (1) provides that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name . . . or misleading description of fact, or false or misleading representation of fact, which . . . (B) in . . . advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of . . . another person's goods [or] services . . . shall

be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

109. Here, the SPLC, in connection with its goods and services, used the Ministry's registered trademark in combination with words, terms, names, misleading descriptions of fact, and false and misleading representations of fact resulting in misrepresentations of the nature, characteristics, and quality of the goods and services of the Ministry, which operates under the federally registered trademark, "D. James Kennedy Ministries." This trademark has been registered with the U.S. Patent and Trademark Office, as documented by the registration numbers listed above.

110. The SPLC misrepresented the goods and services of the Ministry by representing that the Ministry is a Hate Group, when – in reality – the Ministry promotes and advances the Gospel of Jesus Christ, which Gospel promotes love for all people, including those who hate you.

111. The goods and services of the Ministry are not the goods and services of a Hate Group.

112. The Ministry believes that it has been damaged by the SPLC's misrepresentation of the Ministry's goods and services, as those of a Hate Group.

113. On this basis, the SPLC is liable in this civil action to the Ministry, pursuant to 15 U.S.C. § 1125 (a)(1)(B) of the Lanham Act.

114. The Lanham Act, specifically 15 U.S.C. § 1117(a), provides, in relevant part, that the Ministry is entitled to recover: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

26

WHEREFORE, Ministry respectfully prays for the relief against SPLC, as set forth in its prayer for relief.

## COUNT IV – VIOLATION OF 15 U.S.C. § 1125 OF THE LANHAM (AGAINST GUIDESTAR)

115. The Ministry incorporates paragraphs 1 through 49, as if fully set out herein.

116. The Lanham Act, specifically 15 U.S.C. § 1125, provides, in relevant part:

(a) Civil action.

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 USCS § 1125.

117. The name "D. JAMES KENNEDY MINISTRIES" is a registered trademark of Coral Ridge Ministries Media, Inc.

118. Specifically, the trademark "D. JAMES KENNEDY MINISTRIES" has been registered by Coral Ridge Ministries Media, Inc. under the following U.S. Patent

and Trademark Office registrations: 4771968, 4798384, 4771967, 4771966, and 4771965.

119. GuideStar has republished information that it obtained from SPLC designating "D. James Kennedy Ministries" a Hate Group.

120. Therefore, GuideStar has identified the Ministry, using its registered trademark "D. James Kennedy Ministries," as a Hate Group and has published this Hate Group designation of the Ministry's registered trademark in its automated feeds and other publications that it releases to third parties.

121. On information and belief, GuideStar makes its automated feeds and other publications, including publications designating the Ministry a Hate Group, available to third parties for a fee, in some instances.

122. GuideStar misrepresented the Ministry as a Hate Group.

123. The Ministry is not a Hate Group. Rather, the Ministry promotes and advances the Gospel of Jesus Christ, which Gospel promotes love for all people, including those who hate you.

124. The Lanham Act, 15 U.S.C. § 1125(a)(1) provides that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name . . . or misleading description of fact, or false or misleading representation of fact, which . . . (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

125. Here, GuideStar, in connection with its goods and services, used words, terms, names, misleading descriptions of fact, and false and misleading representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliations, connections or the associations of the Ministry through the use of the Ministry's registered trademark. This use of the Ministry's registered trademark in combination with words, terms, names, misleading descriptions of fact, and false and misleading representations of fact identifying the Ministry as a Hate Group are likely to cause the public and potential supporters of the Ministry to be confused, mistaken, or deceived into believing that the Ministry is a Hate Group, or is affiliated with, connected with, and/or associated with Hate Groups, and that the Ministry's registered trademark represents a Hate Group, or is affiliated with, connected with and/or is associated with Hate Groups.

126. The Ministry believes that it has been damaged by these acts of GuideStar.

127. Therefore, the GuideStar is liable in this civil action to the Ministry, pursuant to 15 U.S.C. § 1125 (a)(1)(A) of the Lanham Act.

128. The Lanham Act, 15 U.S.C. § 1125(a) (1) provides that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name . . . or misleading description of fact, or false or misleading representation of fact, which . . . (B) in . . . advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of . . . another person's goods [or] services . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

29

129. Here, GuideStar, in connection with its goods and services, used the Ministry's registered trademark in combination with words, terms, names, misleading descriptions of fact, and false and misleading representations of fact resulting in misrepresentations of the nature, characteristics, and quality of the goods and services of the Ministry, which operates under the federally registered trademark, "D. James Kennedy Ministries." This trademark has been registered with the U.S. Patent and Trademark Office, as documented by the registration numbers listed above.

130. GuideStar misrepresented the goods and services of the Ministry by representing that the Ministry is Hate Group, when – in reality - the Ministry promotes and advances the Gospel of Jesus Christ, which Gospel promotes love for all people, including those who hate you.

131. The goods and services of the Ministry are not the goods and services of a Hate Group.

132. The Ministry believes that it has been damaged by the GuideStar's misrepresentation of the Ministry's goods and services, as those of a Hate Group.

133. On this basis, GuideStar is liable in this civil action to the Ministry, pursuant to 15 U.S.C. § 1125 (a)(1)(B) of the Lanham Act.

134. The Lanham Act, specifically 15 U.S.C. § 1117(a), provides, in relevant part, that the Ministry is entitled to recover: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

WHEREFORE, Ministry respectfully prays for the relief against GuideStar, as set forth in its prayer for relief.

30

**COUNT V – VIOLATION OF TITLE II OF THE CIVIL RIGHTS**
**ACT OF 1964, 42 U.S.C. § 2000a**
**(AGAINST AMAZON.COM AND AMAZONSMILE)**

135. The Ministry incorporates paragraphs 1 through 49, as if fully set out herein.

136. Amazon.com and AmazonSmile are hereinafter known as the "Amazon Defendants."

137. Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a), provides:

> Equal access. All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, **privileges, advantages**, and accommodations of any place of public accommodation, as defined in this section, **without discrimination** or segregation **on the ground of** race, color, **religion**, or national origin.
>
> Title 42 U.S.C. § 2000a(a)(emphasis added).

138. Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(b), provides:

> Establishments affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodgings; facilities principally engaged in selling food for consumption on the premises; gasoline stations; **places of exhibition or entertainment**; other covered establishments. Each of the following establishments which serves the public is a place of public accommodation within the meaning of this title [42 USCS §§ 2000a-2000a-6] if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
>
> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> **(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment**; and

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

Title 42 USCS § 2000a(b)(emphasis added).

139. On information and belief, the Amazon Defendants' business includes: video downloads/streaming, MP3 downloads/streaming, and audiobook downloads / streaming, that is, the Amazon Defendants offer entertainment and exhibition, in interstate commerce.

140. Because the Amazon Defendants' business(es) include entertainment and exhibition in interstate commerce, the Amazon Defendants' business(es) constitute public accommodations.

141. The Ministry was advised by AmazonSmile support that certain categories of organizations are not eligible to participate in AmazonSmile. "We rely on the Southern Poverty Law Center to determine which charities are in ineligible categories."

142. The Ministry was advised by AmazonSmile Support that SPLC's classification of the Ministry was the basis for the denial of the Ministry admission to the AmazonSmile program.

143. SPLC, in its "HATE MAP," classified the Ministry as a Hate Group on the following basis:

> "D. James Kennedy Ministries
> (formerly Truth in Action)
> Fort Lauderdale, Florida
> ANTI-LGBT"

32

144. Therefore, the Ministry was classified as a Hate Group on the basis of its position on "LGBT" (Lesbian Gay Bisexual Transgender) issues.

145. The Ministry's position on "LGBT" issues is inextricably intertwined and connected to the Ministry's religious theology, as shown by the following Bible verses:

> [22] **You shall not lie with a male as with a woman. It *is* an abomination.**
>
> Leviticus 18:22 (emphasis added).

> [26] For this reason God gave them up to vile passions. For even their women exchanged the natural use for what is against nature. [27] **Likewise also the men, leaving the natural use of the woman, burned in their lust for one another, men with men committing what is shameful**, and receiving in themselves the penalty of their error which was due.
>
> Romans 1:26-27 NKJV (emphasis added).

> [8]But we know that the law *is* good if one uses it lawfully, [9]knowing this: that the law is not made for a righteous person, but for *the* lawless and insubordinate, for *the* ungodly and for sinners, for *the* unholy and profane, for murderers of fathers and murderers of mothers, for manslayers, [10]**for fornicators, for sodomites**, for kidnappers, for liars, for perjurers, and if there is any other thing that is contrary to sound doctrine . . .

33

1 Timothy 1:8-11 NKJV (emphasis added).

[6] But from the beginning of the creation **God made them male and female**. [7] For this cause shall **a man leave his father and mother, and cleave to his wife**;

[8] And they twain shall be one flesh: so then they are no more twain, but one flesh.

Mark 10:6-8 NKJV (emphasis added).

[9] Do you not know that the unrighteous will not inherit the kingdom of God? Do not be deceived. **Neither fornicators, nor idolaters, nor adulterers, nor homosexuals, nor sodomites**, [10] nor thieves, nor covetous, nor drunkards, nor revilers, nor extortioners will inherit the kingdom of God. [11] And such were some of you. But you were washed, but you were sanctified, but you were justified in the name of the Lord Jesus and by the Spirit of our God.

1 Corinthians 6:9-11 (emphasis added).

146. Because the Ministry's position on "LGBT" issues is inextricably intertwined and connected to the Ministry's religious theology, and because SPLC and GuideStar have declared the Ministry to be a Hate Group due to the Ministry's stand on LGBT issues, what occurred here is that SPLC and GuideStar have discriminated against the Ministry because of its religious theology and its religious beliefs.

34

147. AmazonSmile Support has stated that the Amazon Defendants are acting on the information provided by SPLC and GuideStar (the decision of SPLC and GuideStar to discriminate against the Ministry based on its religion) and that the Amazon Defendants are using those discriminatory decisions to deny the Ministry admission to the AmazonSmile program.

148. Title 42 U.S.C. § 2000a(a) provides that: All persons shall be entitled to the full and equal enjoyment of the . . . **privileges [and] advantages** . . .of any place of public accommodation . . . **without discrimination** . . . **on the ground of** . . . **religion**.

149. Because the Amazon Defendants are operating a public accommodation(s), it is a violation of Title II of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000a(a), for the Amazon Defendants to deny the Ministry the privileges and advantages of the AmazonSmile program on the basis of the Ministry's religion and the beliefs that are inherent to that religion.

150. Title 42 U.S.C. § 2000a-2 provides:

**No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right of privilege secured by** section 201 or 202 **[42 USCS §§ 2000a,** 2000a-1,] or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 201 or 202 [42 USCS §§ 2000a, 2000a-1], or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202 [42 USCS §§ 2000a, 2000a-1].

Title 42 USCS § 2000a-2 (emphasis added).

151. Here, the Amazon Defendants have denied the Ministry's rights pursuant to  42 USCS §§ 2000a, which establishes a violation of 42 USCS § 2000a-2.

152. Title 42 U.S.C. § 2000a-3(a) provides:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 203 [42 USCS § 2000a-2], a civil action for preventive relief, including an **application for a permanent or temporary injunction, restraining order, or other order**, may be instituted by the person aggrieved . . .

Title 42 USCS § 2000a-3

153. Pursuant to 42 U.S.C. § 2000a-3(a), the Ministry is entitled to bring a civil action for preventive relief, including an application for permanent or temporary injunction, restraining order, etc.

154. Title 42 U.S.C. § 2000a-3(b) provides:

"Attorney's fees; liability of United States for costs. **In any action commenced pursuant to this title [42 USCS §§ 2000a-2000a-6]**, the court, in its discretion, may allow the prevailing party, other than the United States, **a reasonable attorney's fee as part of the costs**, and the United States shall be liable for costs the same as a private person.

155. Pursuant to 42 U.S.C. § 2000a-3(b), the Ministry is entitled to attorney's fees.

WHEREFORE, Ministry respectfully prays for the relief against the Amazon Defendants, as set forth in its prayer for relief.

## PRAYER FOR RELIEF

**WHEREFORE,** Coral Ridge Ministries Media, Inc., d/b/a D. James Kennedy Ministries, respectfully prays that this Court will grant relief as follows:

A. That this Court award D. James Kennedy Ministries special harms from the SPLC for the Ministry's denial of access to the AmazonSmile program and for the Ministry's loss of donors due to SPLC's publication of its defamatory declaration that D. James Kennedy Ministries is a "Hate Group";

36

B. That this Court award D. James Kennedy Ministries damages from SPLC, irrespective of special harms, on the basis that the SPLC's publication of its "Hate Group" declaration regarding D. James Kennedy Ministries constitutes libel per se;

C. That the Ministry be awarded punitive damages from SPLC on the basis that SPLC published its "Hate Group" declaration regarding the Ministry with knowledge that the matter published was false, or with reckless disregard of whether the matter was false;

D. That this Court issue a permanent injunction enjoining SPLC, its officers, agents, servants, employees, and all other persons acting in concert or participation with SPLC from further dissemination of SPLC's defamatory declaration that D. James Kennedy Ministries is a "Hate Group";

E. That this Court award D. James Kennedy Ministries special harms from GuideStar for the Ministry's denial of access to the AmazonSmile program and for the loss of Ministry donors due to GuideStar's republication of SPLC's declaration that D. James Kennedy Ministries is a "Hate Group";

F. That this Court award D. James Kennedy Ministries damages from GuideStar, irrespective of special harms, on the basis that GuideStar's republication of SPLC's declaration that D. James Kennedy Ministries is a "Hate Group" constitutes libel per se;

G. That the Ministry be awarded punitive damages from GuideStar on the basis that GuideStar republished SPLC's "Hate Group" declaration regarding the Ministry with knowledge that the matter published was false, or with reckless disregard of whether the matter was false;

37

H. That this Court issue a permanent injunction enjoining GuideStar, its officers, agents, servants, employees, and all other persons acting in concert or participation with GuideStar from further dissemination of SPLC's defamatory declaration that D. James Kennedy Ministries is a "Hate Group";

I. That this Court declare SPLC's publication of its defamatory claims that D. James Kennedy Ministries (a registered trademark of Coral Ridge Ministries Media, Inc.) is a "Hate Group" violates the Lanham Act, 15 U.S.C. § 1125(a) & (b);

J. That this Court award the Ministry, from SPLC, all damages available to the Plaintiff pursuant to 15 U.S.C. § 1117, including SPLC's profits derived its declaration that the Ministry is a "Hate Group," the damages suffered by the Ministry, and all costs of the action, including attorney's fees;

K. That this Court declare GuideStar's republication of SPLC's defamatory claims that D. James Kennedy Ministries (a registered trademark of Coral Ridge Ministries Media, Inc.) is a "Hate Group" violates the Lanham Act, 15 U.S.C. § 1125(a) & (b);

L. That this Court award D. James Kennedy Ministries, from GuideStar, all damages available to the Plaintiff pursuant to 15 U.S.C. § 1117, including GuideStar's profits derived from the declaration that the Ministry is a "Hate Group," the damages suffered by the Ministry, and all costs of the action, including attorney's fees;

M. That this Court issue a permanent injunction against the Amazon Defendants enjoining the Amazon Defendants from excluding the Ministry from the AmazonSmile program on the basis of its religion.

N. That this Court award attorney's fees and costs to the Ministry from the Amazon Defendants pursuant to 42 U.S.C. § 2000a-3(b).

O. That this Court award such other relief as this Court deems equitable and just.

## JURY DEMAND

156. The Ministry hereby respectfully demands a trial by jury on all issues so triable.

DATED: August 22, 2017

Respectfully submitted,

Charles E. Hall Jr.
Ala. Bar No. HAL080
Attorney for Plaintiff
P.O. Box 7
Dadeville, AL 36853-0007
Telephone (256) 825-5900
Facsimile: (256) 825-2030
Email: chall.law@att.net

David C. Gibbs III, Esq.
Fla. Bar No. 0992062
The National Center for
Life and Liberty, Inc.
2648 FM 407, Suite 240
Bartonville, TX 76226
Telephone: (727) 362-3700
Facsimile: (727) 398-3907
Email: dgibbs@gibbsfirm.com
(*pro hac vice admission pending*)

**ATTORNEYS FOR PLAINTIFF**