IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Montgomery Division

| | | |
|---|---|---|
| CORAL RIDGE MINISTRIES MEDIA, INC., d/b/a D. James Ministries, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:17-cv-566-MHT |
| AMAZON.COM, INC., *et al*., | ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT GUIDESTAR USA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT FACTUAL ALLEGATIONS OF THE COMPLAINT ...........................1

    A.    The Parties ...........................................................................................1

    B.    Allegations Regarding CRM Media's Mission And Activities .............................2

    C.    The AmazonSmile Program And CRM Media's Ineligibility To Participate .........2

    D.    The Allegations Against GuideStar .......................................................4

ARGUMENT ..............................................................................................................6

I.    The Court Lacks Personal Jurisdiction Over Guidestar ...........................................6

    A.    The Complaint Does Not And Cannot Allege Any Basis For General Personal Jurisdiction Over GuideStar ...........................................................7

    B.    The Complaint Does Not And Cannot Allege Any Basis For Specific Personal Jurisdiction Over GuideStar ...........................................................8

        1.    Guidestar's Alleged Single Contact With Alabama Did Not Give Rise To, And Is Not Sufficiently Related To CRM Media's Claims Against Guidestar ...........................................................9

        2.    Guidestar Has Not Purposefully Availed Itself Of The Privilege Of Conducting Activities In Alabama ...........................................................11

II.    The Complaint Fails To State A Claim For Relief ...........................................................12

    A.    Standard Of Review ...........................................................................................12

    B.    The Complaint Fails To State A Defamation Claim Against GuideStar ...............13

    C.    The Complaint Fails To State A Claim For Relief Under The Lanham Act. ........18

        1.    CRM Media Does Not Have A False Association Claim Against GuideStar ...........................................................18

        2.    CRM Media Does Not Have A False Advertising Claim Against GuideStar ...........................................................19

CONCLUSION ..............................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Alms v. Lexis Nexis Med. Review Servs.*,
   No. CIV.A. 10-00646-KD-M, 2011 WL 6304946 (S.D. Ala. Dec. 16, 2011) ....................... 16

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) .................................................................................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 13, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 13

*Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC*,
   307 F. Supp. 2d 1249 (M.D. Ala. 2004) .................................................................. 13

*Blevins v. W.F. Barnes Corp.*,
   768 So. 2d 386 (Ala. Civ. App. 1999) ..................................................................... 14

*Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*,
   786 F.2d 1055 (11th Cir. 1986) ............................................................................... 12

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*,
   __ U.S. __, 137 S. Ct. 1773 (2017) ............................................................................ 8

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ................................................................................. 3

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...................................................................................... 8, 9, 10

*Consol. Dev. Corp. v. Sherritt, Inc.*,
   216 F.3d 1286 (11th Cir. 2000) ................................................................................. 8

*CPC-Rexcell, Inc. v. La Corona Foods, Inc.*,
   912 F.2d 241 (8th Cir. 1990) ................................................................................... 12

*Daimler AG v. Bauman*,
   __ U.S. __, 134 S. Ct. 746 (2014) .............................................................................. 7

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) ................................................................................. 3

*Deutcsh v. Birmingham Post Co.*,
603 So. 2d 910 (Ala. 1992) ..................................................................14, 15, 16

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ...........................................................................9

*Drill Parts & Serv. Co. v. Joy Mfg. Co.*,
619 So. 2d 1280 (Ala. 1993) ............................................................................14

*Edward Lewis Tobinick, MD, v. Novella*,
848 F.3d 935 (11th Cir. 2017) ..........................................................................19

*Fitts v. Minn. Mining & Manuf. Co.*,
581 So.2d 819 (Ala. 1991) ...............................................................................13

*Garrison v. Louisiana*,
379 U.S. 64 (1964) ...........................................................................................17

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) .........................................................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......................................................................................7, 8

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ........................................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 & 9 (1984) ..........................................................................8, 9, 10

*Horsley v. Feldt*,
304 F.3d 1125 (11th Cir. 2002) ..........................................................................3

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ...........................................................................................9

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
299 F.3d 1242 (11th Cir. 2002) ........................................................................20

*Kelly v. Arrington*,
624 So. 2d 546 (Ala. 1993) ..............................................................................14

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
__ U.S. __, 134 S. Ct. 1377 (2014) ..................................................................18

*Liberty Counsel, Inc. v. GuideStar USA, Inc.*,
Civ. A. No. 4:17-CV-71 (E.D.Va.) ..................................................................15

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ...............................................................9, 11

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ....................................................................8

*Michel v. NYP Holdings, Inc*.,
    816 F.3d 686 (11th Cir. 2016) ....................................................................17

*Mooneyham v. State Bd. of Chiropractic Exam'rs*,
    802 So. 2d 200 (Ala. 2001) ........................................................................16

*Mut. Serv. Ins. Co. v. Frit Indus., Inc*.,
    358 F.3d 1312 (11th Cir. 2004) ....................................................................6

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ....................................................................................17

*O'Connor v. Sandy Lane Hotel Co*.,
    496 F.3d 312 (3rd Cir. 2007) ......................................................................10

*Oldfield v. Pueblo De Bahia Lora, S.A*.,
    558 F.3d 1210 (11th Cir. 2009) ................................................................9, 10

*Rush v. Savchuk*,
    444 U.S. 320 (1980) ......................................................................................8

*Sarver v. Jackson*,
    344 F. App'x 526 (11th Cir. 2009) ..............................................................16

*Scullin Steel Co. v. Nat'l Ry. Utilization Corp*.,
    676 F.2d 309 (8th Cir. 1982) ......................................................................12

*Sculptchair, Inc. v. Century Arts, Ltd*.,
    94 F.3d 623 (11th Cir. 1996) ....................................................................6, 9

*SEC v. Carillo*,
    115 F.3d 1540 (11th Cir. 1997) ...............................................................10, 11

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
    693 F.3d 1338 (11th Cir. 2012) ..................................................................18

*Tana v. Dantanna's*,
    611 F.3d 767 (11th Cir. 2010) .................................................................18, 19

*Temploy, Inc. v. Nat'l Council on Comp. Ins.*,
    650 F. Supp. 2d 1145 (S.D. Ala. 2009) .......................................................16

*Twin City Fire Ins. Co. v. Colonial Life & Acc. Ins. Co.*,
    124 F. Supp. 2d 1243 (M.D. Ala. 2000) ................................................................13

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ..............................................................................6

*Walden v. Fiore*,
    __ U.S. __, 134 S. Ct. 1115 (2014) ........................................................................8

## <u>Statutes and Other Authorities</u>

15 U.S.C. § 1125 ................................................................................................18, 19, 20

Ala. R. Civ. P. 4.2(b) ................................................................................................6

Code of Alabama § 6-5-186 ......................................................................................5

Defendant GuideStar USA, Inc. ("GuideStar"), by counsel, and pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure hereby moves the Court to dismiss the Complaint against it, for lack of personal jurisdiction, and in the alternative, for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

This lawsuit arises out of Plaintiff Coral Ridge Ministries Media, Inc.'s ("CRM Media") ineligibility to participate in a program under which Amazon.com, Inc. ("Amazon"), through its affiliate AmazonSmile Foundation ("AmazonSmile"), donates 0.5% of the price of certain purchases on the AmazonSmile website to charitable organizations selected by its customers. By the allegations of the Complaint itself, GuideStar did not do anything that caused CRM Media to be deemed ineligible to participate in this program. Nor did GuideStar—a Delaware non-profit corporation with its principal place of business in Virginia—do anything that would allow CRM Media to sue it in Alabama. The Complaint against GuideStar fails for lack of personal jurisdiction and the lack of a claim upon which relief may be granted, and it should be dismissed.

## RELEVANT FACTUAL ALLEGATIONS OF THE COMPLAINT

### A.    The Parties

GuideStar is a Delaware tax-exempt corporation with its principal place of business in Williamsburg, Virginia. Dkt. #1, Compl. ¶ 7. The Complaint identifies no registered agent for GuideStar in Alabama, but rather, identifies a registered agent in Delaware for purposes of service of the summons upon GuideStar. *Id.* CRM Media d/b/a D. James Kennedy Ministries is a Florida non-profit corporation with its principal place of business in Fort Lauderdale, Florida. *Id.* ¶ 3.

The Complaint also names three other Defendants. Amazon is a Delaware corporation, with its principal place of business in Seattle, Washington. *Id.* ¶ 4. AmazonSmile is a Delaware

tax-exempt organization with a principal place of business in Seattle, Washington. *Id.* ¶ 5. The Southern Poverty Law Center, Inc. ("SPLC"), is an Alabama non-profit corporation with its principal place of business in Montgomery, Alabama. *Id*. ¶ 6.

### B.     Allegations Regarding CRM Media's Mission and Activities

According to the Complaint, CRM Media was founded by Dennis James Kennedy who "was an American pastor, evangelist, and Christian broadcaster." *Id.* ¶ 8. CRM Media produced Dr. Kennedy's weekly television program "which was carried on television networks and was syndicated on numerous other stations with a peak audience of three million viewers in 200 countries." *Id.* ¶ 9. Dr. Kennedy died in 2007, but "much" of CRM Media's "current function is to continue to broadcast the messages contained in Dr. Kennedy's *Truths that Transform* television programs." *Id.* ¶ 12. CRM Media's "vision statement" further declares its intention to "us[e] all available media" to communicate its message. *Id.* ¶ 10. Because "the purchase of broadcast television time is expensive, fundraising is also fundamental to the operation of" CRM Media. *Id.* ¶ 17.

CRM Media has declared as its mission to, among other things, "defend religious liberty, by helping believers understand America's Christian heritage and by motivating them to lovingly engage the culture with the heart and mind of Christ." *Id.* ¶ 11. CRM Media asserts a "religious based opposition" to "same-sex marriage and the homosexual agenda." *Id*. ¶¶ 40, 41.

### C.     The AmazonSmile Program and CRM Media's Ineligibility to Participate

In late 2016, CRM Media's leadership became aware of the "AmazonSmile Program," which is sponsored by Amazon and AmazonSmile. *Id.* ¶ 19. Under this program, Amazon "donates 0.5% of the price of eligible AmazonSmile Purchases to the charitable organizations selected by our customers." *Id.* ¶ 21. The "About AmazonSmile" page on this website (org.amazon.com) states:

**What is AmazonSmile?**

AmazonSmile is a website operated by Amazon that lets customers enjoy the same wide selection of products, low prices, and convenient shopping features as on Amazon.com. The difference is that when customers shop on AmazonSmile (smile.amazon.com), the AmazonSmile Foundation will donate 0.5% of the price of eligible purchases to the charitable organizations selected by customers.

*Id.*; *see also* Exhibit 1(printout of website quoted in ¶¶ 21 and 22 of Complaint).[1]

That page also states the "eligibility requirements for charitable organizations to participate" in the program, including that the organization must (1) be registered and in good standing with the Internal Revenue Service (IRS); and (2) not "engage in, support, encourage, or promote intolerance, hate, terrorism, violence, money laundering, or other illegal activities." Compl. ¶ 22; *see* Exhibit 1. The website further explains that "***Amazon relies on the US Office of Foreign Assets Control and the Southern Poverty Law Center to determine which registered charities fall into these groups.***" Compl. ¶ 22 (emphasis added); *see* Exhibit 1.

On or about January 3, 2017, an employee of CRM Media attempted to register the organization for the AmazonSmile program, without success. Compl. ¶¶ 29-30. The employee was advised by AmazonSmile support staff that:

---

[1] Available at https://org.amazon.com (last accessed September 18, 2017). In considering a motion to dismiss, the Court may consider documents attached or incorporated by reference into the Complaint, provided that such documents are central to the plaintiff's claim and their authenticity is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (permitting consideration of extraneous document when complaint's references to such document were "a necessary part of [plaintiffs'] effort to make out a claim"). "[A] document need not be physically attached to a pleading to be incorporated by reference into it." *Id.* (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.")).

- "certain categories of organizations are not eligible to participate in AmazonSmile" (*id.* ¶ 31);

- "'we [AmazonSmile] rely on the Southern Poverty Law Center to determine which charities are in ineligible categories'" (*id.*);

- "the Southern Poverty Law Center lists [CRM Media] in an ineligible category" (*id.* ¶ 35); and

- this was the "reason [CRM Media] was denied eligibility for the AmazonSmile program" (*id.*).

CRM Media is "aware" that the SPLC has placed CRM Media with the label "ANTI-LGBT" on its "Hate Map" which is published on the SPLC's Internet website.  *Id.* ¶ 34.[2]

### D.     The Allegations Against GuideStar

The Complaint does not allege any facts to suggest that GuideStar had any involvement in CRM Media's ineligibility for the AmazonSmile program.  Just the opposite, the Complaint alleges that, consistent with the statement on the AmazonSmile website, Amazon relies on GuideStar to provide only IRS information:   "Elsewhere in AmazonSmile support's communication with the [CRM Media] employee, AmazonSmile support advised:  '… we rely on GuideStar to send us information from the IRS. … I would expect that they [GuideStar] will include your organization's information in their automated feed to AmazonSmile at the end of January or February.'"  Compl. ¶ 36.

The Complaint also alleges that, six months *after* CRM Media was found ineligibile to participate in AmazonSmile, on June 15, 2017, GuideStar published a blog post on its website in which it stated:

---

[2] *See* https://www.splcenter.org/hate-map?gclid=CjwKCAjwzYDMBRA%201%20EiwAwCv6Jt_7%2Cog66wpxzJdqZNP5sfDCOxi EKdUE_BBoOrR8cqMz4yzpEddughoCYk8QAvD_BwE (last accessed September 18, 2017).

> GuideStar's database has information on 1,684,038 active nonprofits. Recently, we added new information to the profiles of 46 of these organizations: the fact that they had been designated as hate groups by the Southern Poverty Law Center (SPLC).

Compl. ¶ 37; *see also* Exhibit 2 (true and correct copy of blog post).[3]

The Complaint does not allege that CRM Media was among the 46 organizations referenced in this blog post.  It alleges only that the SPLC's hate group information referenced in this blog post originated at SPLC's place of business in Alabama.  *Id*. ¶ 43.

The Complaint speculates that, because AmazonSmile receives "automated feeds" of information from GuideStar at the end of every month, "for those organizations that have been placed on SPLC's 'Hate Map,' that monthly feed from GuideStar now includes the fact that they had been designated as hate groups by the Southern Poverty Law Center." *Id*. ¶ 39.  Even so, the Complaint does not allege that CRM Media has been included in any "automated feed" from GuideStar to AmazonSmile, and does not identify any statement that GuideStar has made about CRM Media to AmazonSmile or any third-party.

The Complaint asserts that CRM Media served a demand letter on GuideStar on August 7, 2017, under § 6-5-186 of the Code of Alabama, "demanding a public retraction of GuideStar's automated feeds and other publications that included SPLC's Hate Group designations." *Id*. ¶ 89.  A true and correct copy of that letter is attached as Exhibit 3.  That letter, however, makes no mention of any "automated feeds;" nor does it identify any publication or occasion in which GuideStar has provided the SPLC's designation of CRM Media as a Hate Group to any third party.  *Id.*

---

[3] Available at https://trust.guidestar.org/page/7 (last accessed September 18, 2017).

## ARGUMENT

The Complaint against GuideStar is subject to dismissal for two independent reasons. First, the Court lacks personal jurisdiction over GuideStar.  Second, the Complaint fails to state a claim upon which CRM Media may be granted relief against GuideStar.

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER GUIDESTAR.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  The Complaint here is conspicuously silent as to any basis under which the Court may exercise personal jurisdiction over GuideStar.  It alleges a basis for the Court's subject matter jurisdiction, Compl., ¶ 1, and makes a cursory allegation of venue, *id.* ¶ 2, but it makes no attempt even to allege a basis for the Court's exercise of personal jurisdiction.  Nor does the Complaint allege facts remotely sufficient to make out a prima facie case of personal jurisdiction over GuideStar.

To establish personal jurisdiction, a plaintiff must show that the court's exercise of jurisdiction over a defendant comports with (1) the forum state's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Mut. Serv. Ins. Co. v. Frit Indus., Inc*., 358 F.3d 1312, 1319 (11th Cir. 2004).  Because Alabama law allows personal jurisdiction consistent with the outer limits of due process, the inquiry effectively collapses into a single issue:  does the assertion of personal jurisdiction over the defendant meet the requirements of the Due Process Clause? *Id*.; *see* Ala. R. Civ. P. 4.2(b).

The requirements of the Due Process Clause are met where: (1) the defendant has "minimum contacts with the forum state;" and (2) "the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Frit Indus.*, 358 F.3d at 1319 (citing *Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 626 (11th Cir. 1996)) (internal

quotation omitted).   What will satisfy these elements depends on whether the personal jurisdiction being claim is general or specific.

### A.   The Complaint Does Not and Cannot Allege Any Basis for General Personal Jurisdiction Over GuideStar.

As the Supreme Court recently clarified, general personal jurisdiction arises only when a non-resident's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"  *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 761 (2014) (internal quotation omitted) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "With respect to a corporation, the place of incorporation and principal place of business are '[p]aradigm . . . bases for general jurisdiction,'" and "have the virtue of being unique that is—each ordinarily indicates only one place—as well as easily ascertainable." *Daimler AG*, 134 S. Ct. at 760 (citation omitted).  Only in the "exceptional case" will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business … be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19.

The Complaint does not allege—nor could it—that GuideStar has such continuous and systematic contacts with Alabama as to render it "at home" in Alabama.   The Complaint alleges that GuideStar is incorporated in Delaware, and has it principal place of business in Virginia. Compl. ¶ 7.  Thus, neither of the two "paradigm bases" for all-purpose jurisdiction are present with respect to GuideStar.   Furthermore, the Complaint does not, and cannot, allege that GuideStar has *any* operations in Alabama, much less operations "so substantial and of such a nature as to render [GuideStar] at home" in Alabama.  *Daimler,* 134 S. Ct. at 761 n.19.  The Court, therefore, does not have general jurisdiction of GuideStar, and CRM Media's claims

against GuideStar can proceed only if CRM Media can establish specific personal jurisdiction over GuideStar in Alabama.  It cannot.

    **B.**    **The Complaint Does Not and Cannot Allege Any Basis for Specific Personal Jurisdiction Over GuideStar.**

Unlike general jurisdiction, specific jurisdiction is based on the defendant's contacts with the forum state that arise out of or are related to the cause of action. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citing *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990)); *see Goodyear,* 564 U.S. at 919; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 & 9 (1984).  For such jurisdiction to exist, there must be "an affiliation between the forum and the underlying controversy, *principally, [an] activity or an occurrence that takes place in the forum State* and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, __ U.S. __, 137 S. Ct. 1773, 1780  (2017) (quoting *Goodyear*, 564 U.S. at 919) (emphasis added).   Moreover, the defendant's suit-related conduct "must create a substantial connection with the forum State;" specific jurisdiction over a defendant cannot be "based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."   *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1121, 1123 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

These requirements also must be satisfied for *every single defendant* over whom a court exercises personal jurisdiction.  *Walden*,  134 S.Ct. at 1122-23.  It is not enough to establish the court's personal jurisdiction over a co-defendant.  *See Rush v. Savchuk*, 444 U.S. 320, 331 (1980) (holding district court erred in attempting to attribute one defendant's contacts to another "by considering the 'defending parties' together and aggregating their forum contacts in determining whether it had jurisdiction").

To determine whether specific jurisdiction exists, the Eleventh Circuit applies a three-part due process test which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing *Burger King*, 471 U.S. at 472–73, 474–75; *Helicopteros Nacionales*, 466 U.S. at 413–14; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220–21 (11th Cir. 2009); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630–31 (11th Cir. 1996)).

The plaintiff "bears the burden of establishing the first two prongs." *Id.* Only if the plaintiff satisfies those first two prongs does the Court examine the third prong, which requires that "a defendant … make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

Here, CRM Media's allegations come nowhere near establishing the first two prongs of the due process test.

### 1.    Guidestar's Alleged Single Contact With Alabama Did Not Give Rise to, and Is Not Sufficiently Related to, CRM Media's Claims Against Guidestar.

The first prong of the test focuses on the "fundamental element of the specific jurisdiction calculus" which requires that the "plaintiff's claim must 'arise out of or relate to' at least one of defendant's contacts with the forum." *Oldfield*, 558 F.3d at 1222 (quoting *Burger King*, 471 U.S. at 472). This inquiry focuses "on the direct causal relationship among 'the defendant, the

forum, and the litigation.'"  *Id.* (quoting *Helicopteros*, 466 U.S. at 414).  More than just "but-for" causation, "the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign....'"  *Id.* at 1223 (quoting *Burger King*, 471 U.S. at 472, and citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322–23 (3rd Cir. 2007) (noting that while but-for causation is a necessary element of the relatedness inquiry, there must also be evidence of a "tacit quid pro quo" between the out-of-state resident and the forum making "litigation in the forum reasonably foreseeable.")).  Thus, "foreseeability constitutes a necessary ingredient of the relatedness inquiry." *Id.* (citing *SEC v. Carillo*, 115 F.3d 1540 (11th Cir. 1997)).

In *Oldfield*, the plaintiff was injured on a chartered fishing boat while he was vacationing at defendant's resort in Costa Rica.  558 F.3d at 1214.  The plaintiff, a resident of Florida, sought to establish personal jurisdiction over the defendant in Florida, on the theory that the defendant's resort website was accessible in Florida.  *Id.* at 1214, 1223.  The court held that the causal connection between the availability of the resort's website in the forum and the plaintiff's injury at the Costa Rican resort was too tenuous to make it foreseeable that the defendant could be haled into court in Florida for the alleged injury.  *Id.* at 1223.

Here, the causal connection is even more attenuated.  GuideStar and Alabama are not mentioned together but once in the Complaint, in the allegation that the "defamatory information …. republished to third-parties by GuideStar originated at SPLC's principal place of business in Montgomery, Alabama."  Compl. ¶ 43.  CRM Media does not claim that any such alleged republication occurred in Alabama.  Merely receiving information that "originates" in the forum state does not demonstrate any purposeful contact with Alabama. Nor does it make it even

-10-

remotely foreseeable that a Virginia recipient of such information could be haled into court in Alabama to defend claims brought by a Florida resident.  Moreover, CRM Media's Lanham Act and defamation claims do not arise out of GuideStar's *receipt* of information.  CRM Media, therefore, has utterly failed to establish specific jurisdiction under the first prong of the due process analysis.

> **2.     Guidestar Has Not Purposefully Availed Itself of the Privilege of Conducting Activities in Alabama.**

CRM also has completely failed to establish specific jurisdiction under the second prong—that GuideStar "purposefully availed" itself of the privilege of conducting activities within Alabama.  For this prong of the due process inquiry, the Court must ask whether the defendant's contacts involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum. *Louis Vuitton*, 736 F.3d at 1357 (citing *Carrillo*, 115 F.3d at 1542).  It considers all contacts between a nonresident defendant and a forum state, and determines whether, individually or collectively, they demonstrate whether the defendant "purposefully availed himself of the [] forum in such a way that he could reasonably foresee being haled" into a court in the forum. *Id.*

In *Louis Vuitton*, for example, the defendant had received orders from multiple Florida residents to ship goods into Florida, and the defendant had shipped the goods—including the billfold that was the subject of the trademark infringement action—into Florida. *Id.*  The Eleventh Circuit, therefore, concluded that the defendant had purposefully solicited business from Florida residents.

This case stands in sharp contrast.  GuideStar is not alleged to have engaged in a single act in or directed towards Alabama.  It is alleged only to have received information from SPLC that originated in Alabama. *See* Compl. ¶ 43.  But merely *receiving* information that was created

-11-

in Alabama does not show purposeful availment of the privilege of conducting activities *in* Alabama. Indeed, contacts less fortuitous and attenuated than this are routinely deemed insufficient. *See, e.g.*, *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir. 1986) ("[A] mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state."); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982) ("[S]olicitation by a nonresident purchaser for delivery outside the forum state is a more minimal contact than that of a (nonresident) seller soliciting the right to ship goods into the forum state."); *CPC-Rexcell, Inc. v. La Corona Foods, Inc.*, 912 F.2d 241, 243-44 (8th Cir. 1990) (nonresident buyer of goods lacked minimum contacts in forum, even though seller was located in forum, buyer had made numerous phone and fax orders to seller's office in forum to purchase goods, and buyer had made payment by mail to seller in forum).

CRM Media has also failed to demonstrate that GuideStar purposefully availed itself of the privilege of conducting activities in Alabama. The exercise of personal jurisdiction over GuideStar, therefore, would not comport with due process. Because CRM Media has not met its burden to allege a prima facie case of personal jurisdiction, the Complaint against GuideStar must be dismissed.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

Even if CRM Media could establish this Court's personal jurisdiction over GuideStar (which it cannot), its Complaint against GuideStar should still be dismissed under Rule 12(b)(6).

### A.   <u>Standard of Review.</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to present "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this notice-pleading requirement is to "give the defendant fair notice of what the claim is and

the grounds upon which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (alteration omitted).  To survive a motion to dismiss, therefore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The legal framework of a claim must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

While specific factual allegations must be accepted as true for purposes of evaluating the sufficiency of the pleadings, this "tenet … is inapplicable to legal conclusions." *Id.*  The Court should conduct a "context-specific" analysis, drawing on "its judicial experience and common sense," and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id*. at 681.  The plausibility standard demands more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Instead, the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

As shown below, the two Counts of the Complaint against GuideStar—Counts II and IV—fall far short of stating any plausible claim for relief against GuideStar.

### B.    The Complaint Fails to State a Defamation Claim Against GuideStar.

In Count II, CRM Media purports to allege a claim of defamation under Alabama law against GuideStar.  Though it is far from clear that Alabama law would govern such a claim,[4]

---

[4] "When a federal court decides a state law claim, whether acting pursuant to diversity or supplemental jurisdiction, it applies the choice-of-law rules of the jurisdiction in which its sits." *Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC,* 307 F. Supp. 2d 1249, 1258-59 (M.D. Ala. 2004) (Albritton, C.J.).  Alabama's choice-of-law rules apply the doctrine of *lex loci delicti*, which provides that tort claims are governed by the law of the state where the harm occurred. *Fitts v. Minn. Mining & Manuf. Co.*, 581 So.2d 819, 820 (Ala. 1991); *see Twin City Fire Ins. Co.*

assuming *arguendo* that Alabama law applies, CRM Media has not stated a plausible claim for relief.

A defamation claim under Alabama law requires the following:

> 1) a false and defamatory statement concerning the plaintiff;
> 2) an unprivileged communication of that statement to a third party;
> 3) fault amounting at least to negligence; and
> 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

*Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993).   A defamatory statement is one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."   *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 389–90 (Ala. Civ. App. 1999).   In order to be actionable, a statement must also "contain a provably false factual connotation."   *Kelly v. Arrington*, 624 So. 2d 546, 550 (Ala. 1993).   "[S]tatement[s] of opinion," "imaginative expression," and "rhetorical hyperbole" therefore do not suffice.   *Deutcsh v. Birmingham Post Co.*, 603 So. 2d 910, 912 (Ala. 1992) (per curiam).

CRM Media's defamation claim against GuideStar fails for at least three reasons.

**First**, CRM Media has not alleged any facts to show that GuideStar made any statement concerning CRM Media that was false or defamatory.  Although CRM Media's theory appears to be that GuideStar has somehow republished the SPLC's designation of CRM Media as a hate

---

*v. Colonial Life & Acc. Ins. Co.*, 124 F. Supp. 2d 1243, 1248 (M.D. Ala. 2000) (DeMent, J.). Count II is apparently based on the theory that a Virginia resident (GuideStar) somehow published allegedly defamatory information to a Washington resident (Amazon) concerning a Florida plaintiff (CRM Media), so it is unlikely that Alabama law would apply to CRM Media's defamation claim against GuideStar.

group to third parties, the Complaint alleges no facts demonstrating the plausibility of this conjecture.

The Complaint's only factual allegation connecting GuideStar and the SPLC's hate group designations relate to GuideStar's blog post in mid-June 2017—six months *after* CRM Media was told by AmazonSmile that it was ineligible to participate in the AmazonSmile program. That blog specifies *where* GuideStar had "recently" begun sharing the SPLC's hate group designation: in GuideStar's "profiles" of 46 of the 1.6 million-plus organizations in its database. *Id.* Tellingly, however, the Complaint *does not* allege that CRM Media was one of those 46 organizations or that GuideStar ever changed CRM Media's profile page to include the fact that it was designated a hate group by the SPLC.[5]

The Complaint also alleges that GuideStar sends monthly "automated feeds" to AmazonSmile. *Id.* ¶ 38. It conclusorily alleges that, for those organizations on the SPLC's Hate Map, the monthly feed from GuideStar now includes "the fact that they had been designated as hate groups by the Southern Poverty Law Center (SPLC)." *Id.* ¶ 39. But that conclusory allegation is belied by the Complaint's detailed factual allegations. The Complaint alleges that AmazonSmile's website expressly states that it relies on GuideStar only "to send [AmazonSmile] information from the IRS," and that it relies on the SPLC to determine which charities are ineligible to participate in AmazonSmile. Compl. ¶¶ 31, 32, 36. The Complaint also alleges that AmazonSmile support staff advised CRM Media that "*the Southern Poverty Law Center* lists [CRM Media] in an ineligible category" and that this is the reason that CRM Media is ineligible to participate in the AmazonSmile program. *Id.* ¶ 35 (emphasis added). The Court's "duty to

---

[5] An example of such a "profile" page can be found in the public record, as Exhibit B to the Complaint filed in June 2017, in *Liberty Counsel, Inc. v. GuideStar USA, Inc.*, Civ. A. No. 4:17-CV-71 (E.D.Va.), ECF No. 1-2.

accept the facts in the complaint as true does not require [it] to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

Because the Complaint does not identify any false and defamatory statement made by GuideStar to anyone about CRM Media, Count II fails to allege any plausible claim of defamation against GuideStar. *See, e.g.*, *Sarver v. Jackson*, 344 F. App'x 526, 529 (11th Cir. 2009) (upholding dismissal of defamation complaint for failure to state claim, when complaint failed to identify any specific written or verbal statements attributed to the defendants); *Temploy, Inc. v. Nat'l Council on Comp. Ins.*, 650 F. Supp. 2d 1145, 1156 (S.D. Ala. 2009) ("No defamation claim can lie where a plaintiff cannot show that the false statement was published concerning the plaintiff, because defamation is personal to the party defamed.").

**Second**, to the extent that CRM Media is claiming that GuideStar has made a statement to a third-party that CRM Media is on the SPLC's Hate Map or has been designated as a hate group by the SPLC, its defamation claim would still fail. The Complaint *admits* that the SPLC has placed CRM Media on its Hate Map and has designated it a hate group. Compl. ¶¶ 34, 78. "Logic requires and Alabama cases demonstrate that a cause of action for defamation cannot lie where, as here, the complaint itself alleges that the defendant's statements were literally true." *Alms v. Lexis Nexis Med. Review Servs.*, No. CIV.A. 10-00646-KD-M, 2011 WL 6304946, at *2 (S.D. Ala. Dec. 16, 2011) (citing *Mooneyham v. State Bd. of Chiropractic Exam'rs*, 802 So. 2d 200, 203 (Ala. 2001) (upholding dismissal of defamation claim that relied on publication of statement that complaint itself alleged to have been true); *Deutcsh*, 603 So. 2d at 911 ("If the published statements are true, there is no actionable cause for libel.").

**<u>Third,</u>** CRM Media has not alleged any facts demonstrating the requisite level of fault. In order to afford the "breathing space essential" to the "fruitful exercise" of First Amendment rights, the Supreme Court has prescribed "an extremely powerful antidote" to the "self-censorship" that results from "common-law … liability for libel and slander." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) (quotation marks omitted). Plaintiffs who "are properly classed as public figures … may recover for injury to reputation only on clear and convincing proof that [a] defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Id.* (referring to the "actual malice" standard set forth in *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)). When the plaintiff is a public figure, or a limited-purpose public figure who has voluntarily injected itself into a particular public controversy, it must allege with sufficient factual plausibility that the challenged statements were made with "actual malice"—*i.e.*, "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *N.Y. Times*, 376 U.S. at 279–80; *see also Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) ("[O]nly those false statements made with the high degree of awareness of their probable falsity … may be the subject of … civil … sanctions.").

The allegations of the Complaint establish CRM Media as a public figure, or at least a limited-purpose public figure. *See, e.g.,* Compl. ¶ 9, 12, 17, 18. Yet, there are no factual allegations in the Complaint that support any inference that the alleged defamatory statement—whatever that statement may have been—was made with a "high degree of awareness of their probable falsity." *Garrison*, 379 U.S. at 74. The only allegation of actual malice is a purely conclusory recital. *See* Compl. ¶ 83 ("GuideStar acted knowingly, intentionally, and with actual malice in publishing SPLC's Hate Group designation of [Plaintiff]…").

This is plainly insufficient.  *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703–04 (11th Cir. 2016) (affirming dismissal of complaint under Rule 12(b)(6) for failure to allege "actual malice" beyond a mere conclusory allegation that defendant was "reckless"); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Court, therefore, should dismiss the defamation claim against GuideStar.

### C.   The Complaint Fails to State a Claim for Relief Under the Lanham Act.

The Court also should dismiss the only other claim against GuideStar, Count IV of the Complaint.  CRM Media has not alleged, and cannot allege, any plausible claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)-(B).  Section 43(a) provides "two distinct bases of liability:" false association, also known as false designation, 15 U.S.C. § 1125(a)(1)(A), and false advertising, 15 U.S.C. § 1125(a)(1)(B).  *Lexmark Int'l Inc. v. Static Control Components, Inc.*, __ U.S. __, 134 S. Ct. 1377, 1384 (2014).  While Count IV appears to invoke both bases, the Complaint utterly fails to state a claim against GuideStar under either theory.

### 1.   CRM Media Does Not Have a False Association Claim Against GuideStar.

Section 43(a) of the Lanham Act creates a federal cause of action for any person injured by another's use of a trademark "in connection with any goods or services" that "is likely to cause confusion, or to cause mistake, or to deceive" as to the origin of a product or service.  15 U.S.C. § 1125(a)(1)(A); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (quotation omitted).  Such a claim requires the plaintiff to show:  "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."  *Suntree Techs.*, 693 F.3d at 1346 (quoting *Tana v. Dantanna's*, 611 F.3d 767,

773 (11th Cir. 2010)).   In determining whether a mark or name adopted by a defendant is confusingly similar to a plaintiff's mark, courts in this Circuit apply a multifactor test, evaluating the following factors:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Tana*, 611 F.3d at 774–75.

CRM Media has not alleged any facts remotely suggesting that GuideStar adopted a name or mark that was the same or confusingly similar to CRM Media's.   The Complaint, therefore, provides no basis for a claim for false association or false designation under § 43(a) of the Lanham Act.

## 2. CRM Media Does Not Have a False Advertising Claim Against GuideStar.

The Complaint also does not state a plausible false advertising claim against GuideStar. "The Lanham Act prescribes liability for false advertising to 'commercial advertising or promotion.'"   *Edward Lewis Tobinick, MD, v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (quoting 15 U.S.C. § 1125(a)(1)(B)).   The Eleventh Circuit has defined "commercial advertising or promotion" as:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations … must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* at 950 (quotations omitted).  Moreover, a false advertising claim requires the plaintiff to show (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement.  *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002).

The Complaint does not allege any facts showing that GuideStar has made any statement about CRM Media in any "commercial advertising or promotion."  Even CRM Media's hypothesis that GuideStar is providing the SPLC's hate group designations to AmazonSmile in its monthly automated feeds would not provide a basis for a false advertising claim.  That monthly data feed would not be commercial speech; it would not have been made by someone in commercial competition with CRM Media; it would not have been made for the purpose of influencing consumers to buy any GuideStar good or service; and a communication sent only to AmazonSmile would not have been disseminated sufficiently to "the relevant purchasing public to constitute 'advertising' or 'promotion'" within the CRM Media's industry.

Moreover, CRM Media has alleged that the SPLC *has* designated it a hate group (*e.g.,* Compl. ¶¶ 37, 39, 40, 42), so any statement to AmazonSmile that relays the fact of this designation would not be false or misleading.  CRM Media also could not show that this automated-feed information—which it alleges goes directly from GuideStar to AmazonSmile— "deceived, or had the capacity to deceive, consumers" or that such "deception had a material effect on the consumers' purchasing decision."

CRM Media, therefore, has not stated and cannot state a claim for false advertising under § 43(a) of the Lanham Act, and Count IV should be dismissed.

-20-

## **CONCLUSION**

For all of these reasons, GuideStar requests that the Court dismiss the Complaint for lack of personal jurisdiction, or alternatively, for failure to state a claim upon which relief may be granted.

Dated:  September 18, 2017

Respectfully submitted,

/s/ Robert E. Rigrish
Bar No. asb-1528-157r
BODKER, RAMSEY, ANDREWS, WINOGRAD &
WILDSTEIN, P.C.
One Securities Centre
Suite 1400
3490 Piedmont Road
Atlanta, GA 30305
Ph. (404) 564-7485
Fax (404) 352-1285
rrigrish@brawwlaw.com

Sona Rewari (*pro hac vice* admission pending)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
(703) 714-7512 (telephone)
(703) 918-4018 (facsimile)
srewari@hunton.com

*Attorneys for Defendant GuideStar USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ Robert E. Rigrish
Bar No. asb-1528-157r
BODKER, RAMSEY, ANDREWS, WINOGRAD &
WILDSTEIN, P.C.
One Securities Centre
Suite 1400
3490 Piedmont Road
Atlanta, GA 30305
Ph. (404) 564-7485
Fax (404) 352-1285
rrigrish@brawwlaw.com
