IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

| | |
|---|---|
| CORAL RIDGE MINISTRIES MEDIA, INC., | |
| Plaintiff, | Case No. 2:17-cv-566-MHT-DAB |
| v. | **THE AMAZON DEFENDANTS'** |
| | **MOTION TO DISMISS THE FIRST** |
| AMAZON.COM, INC., AMAZONSMILE | **AMENDED COMPLAINT UNDER** |
| FOUNDATION, INC., and SOUTHERN | **FEDERAL RULE OF CIVIL** |
| POVERTY LAW CENTER, INC., | **PROCEDURE 12(B)(6)** |
| Defendants. | |

AMAZON DEFENDANTS' MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND .............................................................................. 2

    A.  The AmazonSmile Foundation Donates a Percentage of Revenue from Purchases on the AmazonSmile Website to Eligible Charities. ........................... 2

    B.  Coral Ridge Alleges AmazonSmile Discriminated Against It by Excluding It from the AmazonSmile Giving Program Because Coral Ridge Opposes "the Homosexual Agenda." ................................................................ 3

III.  ARGUMENT ...................................................................................................... 4

    A.  Coral Ridge Has Failed to Allege a Claim for Discrimination. ............................ 5

        1.  Coral Ridge has failed to allege that AmazonSmile's charitable giving program is a place of public accommodation. ................................ 6

        2.  Coral Ridge has failed to allege AmazonSmile intentionally discriminated against it on the basis of religion ........................................ 12

    B.  Coral Ridge Has Failed to Allege a Claim for Negligence. ................................. 16

    C.  Applying Title II of the Civil Rights Act to AmazonSmile Would Infringe AmazonSmile's First Amendment Rights. .......................................... 19

IV.  CONCLUSION .................................................................................................. 22

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abood v. Detroit Bd. of Educ.*,
   431 U.S. 209 (1977)..................................................................................................19

*Afkhami v. Carnival Corp.*,
   305 F. Supp. 2d 1308 (S.D. Fla. 2004) ...................................................................15

*Akiyama v. U.S. Judo, Inc.*,
   181 F. Supp. 2d 1179 (W.D. Wash. 2002)...................................................13, 14, 15

*Allen Trucking Co. v. Blakely Peanut Co.*,
   340 So. 2d 452 (Ala. 1976)......................................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................4

*Boyle v. Jerome Country Club*,
   883 F. Supp. 1422 (D. Idaho 1995) .........................................................................14

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) .................................................................................4

*Camp v. Ala. Telco Credit Union*,
   2013 WL 2106727 (N.D. Ala. May 13, 2013)............................................................4

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ..............................................................................9, 10

*Cockrell v. Sparks*,
   510 F.3d 1307 (11th Cir. 2007) .................................................................................5

*Dalton v. Herrin*,
   2015 WL 1275302 (S.D. Ala. Mar. 19, 2015) .........................................................10

*Daniel v. Paul*,
   395 U.S. 298 (1969)..................................................................................................18

*Denny v. Elizabeth Arden Salons, Inc.*,
   456 F.3d 427 (4th Cir. 2006) ...................................................................................11

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

*Edwards v. United States*,
    552 F. Supp. 635 (M.D. Ala. 1982) (Thompson, J.) ................................................16

*Fahim v. Marriott Hotel Servs., Inc.*,
    551 F.3d 344 (5th Cir. 2008) ...............................................................................5

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
    500 F.3d 1276 (11th Cir. 2007) ...........................................................................4

*Finn v. Warren County*,
    768 F.3d 441 (6th Cir. 2014) ...............................................................................17

*In re Genetically Modified Rice Lit.*,
    666 F. Supp. 2d 1004 (E.D. Mo. 2009)................................................................17

*Glickman v. Wileman Bros. & Elliott, Inc.*,
    521 U.S. 457 (1997).......................................................................................20, 21

*Harris v. Quinn*,
    134 S. Ct. 2618 (2014).........................................................................................19

*Houston v. Mile High Adventist Acad.*,
    846 F. Supp. 1449 (D. Colo. 1994) ....................................................................17

*Jackson v. City of Pittsburg*,
    2009 WL 1684701 (N.D. Cal. June 12, 2009) ....................................................17

*Jalal v. Lucille Roberts Health Clubs Inc.*,
    254 F. Supp. 3d 602 (S.D.N.Y. May 22, 2017),
    *vacated on settlement*, No. 17-1936, Doc. 33 (2d Cir. Aug. 29, 2017) ............14, 15

*Jones v. Stein Mart Dept. Store*,
    2014 WL 2611536 (S.D. Ala. June 11, 2014) .....................................................11

*Keller v. State Bar of Cal.*,
    496 U.S. 1 (1990).................................................................................................20

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
    567 U.S. 298 (2012).................................................................................19, 20, 21

*LaRoche v. Denny's, Inc.*,
    62 F. Supp. 2d 1366 (S.D. Fla. 1999) .................................................................5

*NAACP v. Hunt*,
    891 F.2d 1555 (11th Cir. 1990) ...........................................................................19

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

*Newman v. Piggie Park Enters., Inc.*,
  377 F.2d 433 (4th Cir. 1967), *aff'd*, 390 U.S. 400 (1968) ....................................11

*Newman v. Piggie Park Enters., Inc.*,
  390 U.S. 400 (1968)..................................................................................................18

*Noah v. AOL Time Warner, Inc.*,
  261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd*, 2004 WL 602711 (4th Cir. 2004)......................8

*Norelus v. Denny's, Inc.*,
  628 F.3d 1270 (11th Cir. 2010) ................................................................................12

*Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*,
  925 So. 2d 927 (Ala. 2005)......................................................................................17

*Robinson v. Paragon Foods, Inc.*,
  2006 WL 2661110 (N.D. Ga. Sept. 15, 2006) ........................................................15

*Russello v. United States*,
  464 U.S. 16 (1983)....................................................................................................9

*Saleh v. Time Warner Cable*,
  2017 WL 1968366 (N.D. Tex. April 26, 2017) .........................................................8

*Scott v. Thomas & King, Inc.*,
  2010 WL 3603836 (S.D. Ohio Sept. 9, 2010) .........................................................17

*Smith v. Eike*,
  2013 WL 639187 (M.D. Ala. Jan. 9, 2013) .........................................................5, 13

*Solomon v. Waffle House, Inc.*,
  365 F. Supp. 2d 1312 (N.D. Ga. 2004) .....................................................................5

*Stanford v. Halloway*,
  2017 WL 1048257 (D. Md. Mar. 20, 2017)..............................................................10

*Summit Med. Ctr. of Ala., Inc. v. Riley*,
  274 F. Supp. 2d 1262 (M.D. Ala. 2003) ......................................................19, 20, 21

*Tippins v. City of Dadeville, Ala.*,
  23 F. Supp. 3d 1393 (M.D. Ala. 2014) ...................................................................11

*United States v. Baxter Int'l, Inc.*,
  345 F.3d 866 (11th Cir. 2003) ...................................................................................7

*United States v. Bestfoods*,
  524 U.S. 51 (1998)....................................................................................................11

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001).........................................................................19, 20, 21

*Vista Mktg., LLC v. Burkett*,
    812 F.3d 954 (11th Cir. 2016) ...................................................................7

*Welsh v. Boy Scouts of Am.*,
    993 F.2d 1267 (7th Cir. 1993) ........................................................9, 10, 12

*Wilkins v. Denamerica Corp.*,
    2001 WL 1019698 (W.D.N.C. May 5, 2001) ...........................................11

*Williams v. Ecivres Corp.*,
    1995 WL 127182 (S.D. Tex. March 23, 1995)..........................................17

*Williams v. Le Crewe de Spaniards*,
    2009 WL 197303 (S.D. Ala. Jan. 6, 2009) ...............................................10

*Winberry v. United Collection Bureau, Inc.*,
    697 F. Supp. 2d 1279 (M.D. Ala. 2010) ...................................................17

*Zatarain v. Swift Transp., Inc.*,
    776 F. Supp. 2d 1282 (M.D. Ala. 2011) .............................................16, 18

**Statutes**

42 U.S.C. § 2000a ................................................................................ *passim*

42 U.S.C. §2000a-3(c) ...............................................................................8

42 U.S.C. § 2000d ......................................................................................8

**Other Authorities**

*Merriam-Webster's Collegiate Dictionary* (10th ed. 1993) ..........................7

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

# I.  INTRODUCTION

Plaintiff Coral Ridge Ministries Media, Inc., an organization that openly opposes what it calls "the homosexual agenda," asks this Court to force Defendant AmazonSmile Foundation to donate money to Coral Ridge.  AmazonSmile, a nonprofit foundation created by Defendant Amazon.com, Inc., donates a percentage of revenue from purchases on smile.amazon.com to certain charitable organizations.  Coral Ridge alleges that the Amazon Defendants discriminated against it on the basis of religion by excluding it from the AmazonSmile giving program, and asserts claims for negligence and violation of Title II of the Civil Rights Act.  The Court should dismiss these claims with prejudice for the following reasons.

*First*, Coral Ridge has not alleged, as Title II requires, that AmazonSmile's giving program is a place of public accommodation.  Nor could it: Title II applies only to physical places.  Instead, Coral Ridge claims that the AmazonSmile and Amazon websites, Amazon's physical bookstores, and grocery stores operated by Whole Foods Market, Inc. (an Amazon subsidiary) are places of public accommodation.  Even if this were correct, it is irrelevant.  Coral Ridge does not allege it was unable to purchase goods from Amazon's websites or bookstores, or any Whole Foods store.  Nor can AmazonSmile's corporate relationships with other Amazon entities bring it within Title II's scope.  Title II applies to places, not programs, and not corporate families; a different reading would expand the statute well beyond its language and purpose.

*Second*, Coral Ridge has not plausibly alleged that AmazonSmile intentionally discriminated against it because of religion.  Instead, as the First Amended Complaint admits, AmazonSmile excludes "[o]rganizations that engage in, support, encourage, or promote intolerance [or] hate," does not independently decide which organizations are ineligible, and instead relies on the assessment of co-defendant Southern Poverty Law Center.  FAC ¶ 44.  Coral

Page 1 – AMAZON DEFENDANTS' MOTION TO DISMISS

Ridge therefore does not allege (nor could it) that AmazonSmile discriminated against Coral Ridge because of its religion, or that it did so intentionally, as Title II requires.

*Third*, Coral Ridge has not alleged a negligence claim.  Coral Ridge asserts the Amazon Defendants breached their duties under Title II.  Again, Title II requires that discrimination be intentional, in a place of public accommodation, and done because of a protected characteristic. Coral Ridge cannot evade these statutory requirements by asserting a claim for negligence.

*Finally*, Coral Ridge's claim, if successful, would infringe AmazonSmile's First Amendment rights by forcing it to subsidize Coral Ridge's political speech.  Coral Ridge is devoted to "communicat[ing] the Gospel of Jesus Christ," which includes "religious-based opposition to same-sex marriage and the homosexual agenda."  FAC ¶¶ 33, 82.  AmazonSmile, not Coral Ridge, decides whether AmazonSmile supports Coral Ridge's view.  Coral Ridge's theory would require any business to fund speech with which it disagrees merely because it funds other speech with which it agrees—curtailing a key First Amendment freedom.

Coral Ridge has not stated and cannot state a claim for relief against the Amazon Defendants, and this Court should dismiss its claims with prejudice.

## II.  FACTUAL BACKGROUND

### A.    The AmazonSmile Foundation Donates a Percentage of Revenue from Purchases on the AmazonSmile Website to Eligible Charities.

Amazon "is an American electronic commerce and cloud computing company, and is the largest Internet-based retailer in the world."  FAC ¶ 5.  Coral Ridge alleges "AmazonSmile is a website operated by Amazon that lets customers enjoy the same wide selection of products, low prices, and convenient shopping features as on Amazon.com."  *Id.* ¶ 43 (quoting the "About AmazonSmile" tab located at https://org.amazon.com/).  Unlike Amazon, "when customers shop

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

on AmazonSmile (smile.amazon.com), the AmazonSmile Foundation will donate 0.5% of the price of eligible purchases to the charitable organizations selected by customers." *Id.*

AmazonSmile does not make donations to any member of the public, or any charity. Rather, it donates to charitable organizations that satisfy certain requirements.  First, organizations "must be registered and in good standing with the IRS as a 501(c)(3)" and meet other regulatory criteria.  *Id.* ¶ 44 (quoting the "About AmazonSmile" tab located at https://org.amazon.com/).  Second, they "must . . . adhere to the AmazonSmile Participation Agreement."  *Id.*  Finally, "[o]rganizations that engage in, support, encourage, or promote intolerance, hate, terrorism, violence, money laundering, or other illegal activities are not eligible to participate."  *Id.*  AmazonSmile "relies on the US Office of Foreign Assets Control and the Southern Poverty Law Center to determine which registered charities fall into these groups."  *Id.*

**B.     Coral Ridge Alleges AmazonSmile Discriminated Against It by Excluding It from the AmazonSmile Giving Program Because Coral Ridge Opposes "the Homosexual Agenda."**

Coral Ridge alleges it is an evangelical non-profit media corporation dedicated to broadcasting the late D. James Kennedy's understanding of the Christian gospel.  *See* FAC ¶¶ 32-35.  Coral Ridge "seeks to communicate the Gospel of Jesus Christ, the supremacy of His Lordship, and a biblically informed view of the world, using all available media."  *Id.* ¶ 33.  This view includes an avowed literal adherence to Biblical statements about homosexuality, *see id.* ¶ 155, and "opposition to same-sex marriage and the homosexual agenda," *id.* ¶ 82.

In January 2017, Coral Ridge applied for membership in the AmazonSmile program.  *Id.* ¶ 51.  Ultimately, it claims, AmazonSmile advised it that "certain categories of organizations are not eligible to participate in AmazonSmile," and that AmazonSmile "rel[ies] on the Southern Poverty Law Center to determine which charities are in ineligible categories."  *Id.* ¶ 152.  Coral

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

Ridge claims AmazonSmile excluded it from the giving program because SPLC placed Coral

Ridge on its "Hate Map."  *Id.* ¶¶ 152-157.  SPLC's Hate Map defines "hate groups" as those with

"beliefs or practices that attack or malign an entire class of people, typically for their immutable

characteristics" whose "activities can include criminal acts, marches, rallies, speeches, meetings,

leafleting or publishing."  *Id.* ¶ 59; https://www.splcenter.org/hate-map.[1]

Coral Ridge brought this lawsuit against the Amazon Defendants, SPLC, and GuideStar

USA, Inc.  Doc. 1.  It has since voluntarily dismissed GuideStar, Doc. 23, and filed a First

Amended Complaint, Doc. 40.  The First Amended Complaint alleges that the Amazon

Defendants unlawfully discriminated against Coral Ridge on the basis of religion under Title II

of the Civil Rights Act, 42 U.S.C. § 2000a *et seq.*, either intentionally or negligently, because

AmazonSmile excluded Coral Ridge from its charitable giving program.

## III.  ARGUMENT

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fin. Sec.*

*Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (complaint must "contain

either direct or inferential allegations respecting all the material elements necessary to sustain a

recovery under some viable legal theory" (citation and internal quotation marks omitted)).  This

requires identifying specific grounds for relief, not merely a "formulaic recitation of the elements

of a cause of action." *Twombly*, 550 U.S. at 555.  In addition, although the Court must accept all

---

[1] Paragraphs 57 and 59 of the FAC provide a link to the SPLC Hate Map. Although the Court
need not consider the Hate Map to resolve Amazon's motion, it may do so.  *Camp v. Ala. Telco*
*Credit Union*, 2013 WL 2106727, at *2 (N.D. Ala. May 13, 2013) (court could consider website
referenced in complaint and attached to motion to dismiss) (citing *Brooks v. Blue Cross & Blue*
*Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)).

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

fact allegations as true, this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79.  Finally, the Court may dismiss a lawsuit with prejudice if amendment would be futile. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).  Under this standard, dismissal with prejudice is proper here.

### A.       Coral Ridge Has Failed to Allege a Claim for Discrimination.

Title II of the Civil Rights Act prohibits intentional discrimination because of race, color, religion, or national origin in certain places of public accommodation.  42 U.S.C. § 2000a. Although the Eleventh Circuit has not articulated a test to decide a Title II claim, many courts have used the test for employment discrimination under Title VII.  *See, e.g.*, *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008) ("Because this circuit has not articulated a different test for determining whether a plaintiff has established a prima facie case under Title II, we think the district court was correct to refer to Title VII case law to fill this void."); *Smith v. Eike*, 2013 WL 639187, at *5-6 (M.D. Ala. Jan. 9, 2013), *report and recommendation adopted by* 2013 WL 639134 (M.D. Ala. Feb. 20, 2013) (Thompson, J.).  This test requires a plaintiff to show (1) it is a member of a protected class (2) that tried to contract for services in a place of public accommodation and (3) was denied the full benefit or enjoyment of that place of public accommodation, and (4) such services were available to those similarly situated outside the class. *Solomon v. Waffle House, Inc.*, 365 F. Supp. 2d 1312, 1331 (N.D. Ga. 2004).  Unlike Title VII, Title II also requires the plaintiff to allege *intentional* discrimination.  *LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1370 n.2 (S.D. Fla. 1999) ("[T]he clear language of Title II itself speaks in terms of disparate treatment (as opposed to disparate impact, for which intent is not an element.)") (collecting cases)); *Smith*, 2011 WL 639187 at *6.

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

Coral Ridge's claim fails because Coral Ridge has not plausibly alleged at least two elements: that the AmazonSmile giving program is a place of public of accommodation, or that AmazonSmile intentionally discriminated against Coral Ridge because of religion.

**1.    Coral Ridge has failed to allege that AmazonSmile's charitable giving program is a place of public accommodation.**

Title II guarantees "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation," without discrimination, including on the basis of religion.  42 U.S.C. § 2000a(a).  Under the statute, "[e]ach of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce . . . .:"

> (1) any inn, hotel, motel, or other *establishment* which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other *facility* principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other *place* of exhibition or entertainment; and
>
> (4) any establishment (A)(i) which is *physically located within the premises of any establishment* otherwise covered by this subsection, or (ii) within the premises of which is *physically located* any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b) (emphases added).

The Amended Complaint does not allege that the AmazonSmile giving program is a public accommodation.  Instead, Coral Ridge makes a series of allegations about other Amazon entities.  Coral Ridge alleges, for example, that the Amazon and AmazonSmile websites are places of public accommodation because they permit customers to purchase entertainment products, such as DVDs and books.  *See* FAC ¶¶ 150, 171.  Coral Ridge also alleges that grocery

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

stores owned by Amazon subsidiary Whole Foods and Amazon's physical bookstores are places of public accommodation, and that the AmazonSmile giving program is a "privilege" or "advantage" of Amazon's businesses as a whole.  *Id.* ¶¶ 8-10, 14, 160, 173.  None of these theories transforms AmazonSmile's giving program into a place of public accommodation.

In interpreting statutory language, the Court must "assume that Congress employed the common and ordinary meaning of the terms in the statute, . . . give full effect to each of the provisions, . . . [and] consider any specific terms and the particular provision at issue in light of the entire statutory context."  *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 965 (11th Cir. 2016) (citation omitted).  Applying these principles here, the definition of "public accommodation" under Title II is far narrower than Coral Ridge suggests: Title II applies only to physical places of the type listed in the statute—not websites, bookstores, and certainly not programs.

Title II applies only to physical places.  The "common and ordinary" meaning of "place" is a physical space.  *See, e.g.*, *Merriam-Webster's Collegiate Dictionary* 887-88 (10th ed. 1993) ("1 a: physical environment . . . c: physical surroundings . . . 2b:  a building or locality used for a special purpose <a ~ of learning> <a fine eating ~> . . . .").  Accordingly, the examples of "establishments," "facilities," and "places" in Subsections (1) through (3) of Section 2000a(b)— such as hotels, cafeterias, and theaters—all are physical places, and Subsection (4) refers to "premises."  *See United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 906 (11th Cir. 2003) ("Under the doctrine of *ejusdem generis*, 'when an enumeration of specific things is followed by some more general word or phrase, then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated.'" (citation and internal quotation marks omitted)).  That Title II applies only to physical places is also evident from its requirement that plaintiffs notify local authorities before filing suit if the "alleged act or practice

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

prohibited by this subchapter . . . occurs" in a place with a local law prohibiting discrimination. 42 U.S.C. §2000a-3(c).  If Title II applied to discrimination that does not occur in a physical place, this section would be meaningless.

Consequently, at least one court has found that "online services do not constitute a 'place of public accommodation' under Title II."  *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540 (E.D. Va. 2003), *aff'd*, 2004 WL 602711 (4th Cir. 2004).  In *Noah*, the court rejected a claim based on religious discrimination in a chat room, reasoning that "[u]nlike a theater, concert hall, arena, or any of the other 'places of entertainment' specifically listed in § 2000a(b), a chat room does not exist in a particular physical location" and therefore "lacks the physical presence necessary to constitute a place of public accommodation under Title II."  *Id.* at 544-55; *see also Saleh v. Time Warner Cable*, 2017 WL 1968366, at *4 (N.D. Tex. April 26, 2017) ("[I]t does not seem that Title II applies to the provision of cable and internet services."), *report and recommendation adopted by* 2017 WL 1956244 (N.D. Tex. May 11, 2017).  In contrast, no court appears to have held that Title II applies to the Internet.

For similar reasons, programs are not places of public accommodation.  *See* FAC ¶¶ 152-153 (admitting AmazonSmile is a "program" for which "certain categories of organizations are not eligible to participate").  By its very terms, Title II refers to "place[s]," not programs.  If Congress intended Title II to apply to programs, it would have said so, as it did in Title VI of the same Act, which provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any *program or activity* receiving Federal financial assistance."  42 U.S.C. § 2000d (emphasis added).  An interpretation of Title II to encompass *any* program—federally funded or not—would render Title VI superfluous.  Moreover, where, as

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

here, "Congress includes particular language in one section of a statute" (the term "program" in Title VI), but "omits it in another section of the same Act" (Title II), "it is generally presumed that Congress acted intentionally and purposefully in the disparate inclusion and exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation and internal quotation marks omitted).

Analogously, courts have held membership organizations are not places of public accommodation. *See, e.g.*, *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1269 (7th Cir. 1993) (Boy Scouts of America not a public accommodation because "[t]he statute clearly governs only an entity that: (1) 'serves the public' and (2) may be classified as an 'establishment,' 'place,' or 'facility'" (quoting 42 U.S.C. § 2000a(b)); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994) (Title II did not apply to organization that provided information about cults to public; "Title II explicitly covers places, establishments, lodgings and facilities open to the public at large. . . . Nowhere does the statute . . . indicate congressional intent to regulate anything other than public facilities.").

*Welsh* and *Clegg* rejected the tenuous argument that the organization at issue was a "place[] of entertainment or exhibition" under Section 2000a(b)(3)—the same argument Coral Ridge advances here. FAC ¶ 150. In *Welsh*, the Seventh Circuit rejected a claim that the Boy Scouts of America had refused membership to a child and father who would not affirm their belief in God, finding the Boy Scouts is not a place of public accommodation. 993 F.2d 1267. Relying on the statute's "plain meaning," the court noted that the statute "delineates the entities included therein as places, establishments, lodgings, and facilities," and none "remotely resembles a membership organization." *Id.* at 1269. That the Scouts provided entertainment to the public did not make it an "other place of exhibition or entertainment": The "clear language of the statute mandates a different conclusion" because Title II ties a "place of exhibition or

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

entertainment" to a physical facility.  *Id.*  In *Clegg*, the Ninth Circuit rejected a claim that an organization that distributed information about cults, supported former cult members, and sold books and tapes was a public accommodation, stating "Congress' intent in enacting Title II was to provide a remedy only for discrimination occurring in facilities or establishments serving the public: to conclude otherwise would obfuscate the term 'place' and render nugatory the examples Congress provides to illuminate the meaning of that term."  18 F.3d at 755.

The AmazonSmile giving program is akin to a membership organization—it is not a physical facility to which Title II applies.  As the *Welsh* court held, "Congress focused exclusively on prohibiting discrimination in *places of public accommodation* and not in every conceivable social relationship."  993 F.2d at 1275.  To conclude that the program is a "place" under Title II "would be tantamount to finding that an organization is a 'place.'  Such an interpretation would be at odds with the express language of the statute."  *Clegg*, 18 F.3d at 755; *see also Stanford v. Halloway*, 2017 WL 1048257, at *3 (D. Md. Mar. 20, 2017) (dismissing Title II claim against association where plaintiff did not "refer[] to any physical space"); *Dalton v. Herrin*, 2015 WL 1275302, at *7 (S.D. Ala. Mar. 19, 2015) (Elks Lodge was not covered by Title II); *Williams v. Le Crewe de Spaniards*, 2009 WL 197303, at *6 (S.D. Ala. Jan. 6, 2009) (same with respect to private Mardi Gras association), *report and recommendation adopted by* 2009 WL 197254 (S.D. Ala. Jan. 23, 2009).

Coral Ridge cannot escape this conclusion by claiming that the Amazon and AmazonSmile websites, Whole Foods stores, and Amazon bookstores are places of public accommodation.  Even if this were correct (and it is largely not[2]), Coral Ridge does not allege

---

[2] The definition of "place of public accommodation" is not only confined to physical places, *supra* at 7-9, but also places of the type listed in the statute.  Title II does not protect every retail

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

that it was denied service at a Whole Foods store or Amazon bookstore, could not purchase products using Amazon's websites, or could not donate to an eligible charity when using the AmazonSmile website. Instead, Coral Ridge alleges it was denied an opportunity to *receive* donations from the AmazonSmile giving program. Thus, the question is whether that program is a place of public accommodation. It is not.

To the extent Coral Ridge claims Amazon's websites and bookstores and Whole Foods stores render Amazon, as a whole, a place of public accommodation, or that receiving donations from AmazonSmile is a "privilege" or "advantage" of the larger Amazon enterprise, these interpretations, too, are untenable. Title II guarantees "full and equal enjoyment of . . . privileges [and] advantages . . . *of a[] place of public accommodation*." 42 U.S.C. § 2000a(a) (emphasis added). The statute applies to "place[s]," not corporate entities that own or operate, directly or indirectly, a place of public accommodation. *Id.*[3] And the privileges and advantages that Title II guarantees are those "of" the place of public accommodation, or, in other words, those associated with the physical place. AmazonSmile's giving program is not a "privilege" or "advantage" of

_____

store or place open to the public. *See, e.g., Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 431-32 (4th Cir. 2006) (rejecting claim that Title II applied to beauty salon, noting the statute "sets forth a comprehensive list of establishments that qualify as a 'place of public accommodation,' and in so doing excludes from its coverage those categories of establishments not listed"); *Newman v. Piggie Park Enters., Inc.*, 377 F.2d 433, 436 (4th Cir. 1967) ("Retail stores, food markets, and the like were excluded from the [Civil Rights Act of 1964] . . . ."), *aff'd*, 390 U.S. 400 (1968); *Jones v. Stein Mart Dept. Store*, 2014 WL 2611536 at *3 n.5 (S.D. Ala. June 11, 2014) (collecting cases); *Tippins v. City of Dadeville, Ala.*, 23 F. Supp. 3d 1393, 1395 (M.D. Ala. 2014) (cemetery was not a place of public accommodation).

[3] A different result would also undermine the distinctions in corporate form. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and internal quotation marks omitted); *see also Wilkins v. Denamerica Corp.*, 2001 WL 1019698, at *11 (W.D.N.C. May 5, 2001) (dismissing corporate affiliates of Title II defendant where "plaintiffs concede [they] should no longer be in this case because corporate structure would prevent the imputation of liability").

Page 11 – AMAZON DEFENDANTS' MOTION TO DISMISS

shopping at a Whole Foods store (or any other physical place), nor can those stores render Amazon as a whole a place of public accommodation.

Coral Ridge's theory, if adopted, would expand Title II in an unprecedented and illogical manner. Under Coral Ridge's view, whenever a corporate entity operates a place of public accommodation—directly or indirectly through one or more related entities—Title II applies to every aspect of every member of the corporate family. For example, the Walt Disney Company, which operates theme parks (places of public accommodation), would have to permit any actor to audition for a movie produced by its studio. The Trump Organization, which operates hotels (places of public accommodation), would have to admit anyone to its private Mar-a-Lago Club. And Berkshire Hathaway, which owns the Dairy Queen fast food chain (places of public accommodation), would have to allow anyone to attend the flight safety school that it also owns. Title II does not reach this far. Merely because Amazon is the corporate parent of a company that operates a place of public accommodation does not mean that Title II governs a charitable program operated by a foundation that Amazon created.

Finally, Coral Ridge alleges that Amazon is replacing venues "typically subject to Title II as public accommodations," FAC ¶ 19. This is nothing more than an admission that Title II does not apply to the Amazon Defendants. Even if Coral Ridge believes that it should, "[c]ourts may not rewrite the language of a statute in the guise of interpreting it in order to further what they deem to be a better policy than the one Congress wrote into the statute." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1300-01 (11th Cir. 2010); *see also Welsh*, 993 F.2d at 1271 (noting that only Congress can re-write Title II to reach organizations). Title II does not govern AmazonSmile's giving program, and the Court should dismiss the claim with prejudice.

### 2.      Coral Ridge has failed to allege AmazonSmile intentionally discriminated against it on the basis of religion.

Even if AmazonSmile was a place of public accommodation, Coral Ridge's claim would still fail because Coral Ridge does not allege any discrimination on the basis of religion, let alone intentional discrimination.  Rather, as Coral Ridge acknowledges, AmazonSmile excludes "[o]rganizations that engage in, support, encourage, or promote intolerance [or] hate," and relies on the SPLC "to determine which charities are in ineligible categories."  FAC ¶¶ 44, 54, 152. The Court should dismiss Coral Ridge's Title II claim for this independently sufficient reason.

As this Court has held, "[e]vidence of discriminatory intent is required to establish a *prima facie* case of . . . discrimination" under Title II.  *See Smith*, 2013 WL 639187, at *6.  It is not sufficient to allege a defendant discriminated against the plaintiff by applying a religion-neutral policy or criteria—even if such application offends or affects a plaintiff's religious beliefs.  Otherwise, any place of public accommodation that, for example, prohibited smoking, would unlawfully discriminate against those whose religion requires smoking; that prohibited hats would discriminate against adherents required to cover their heads; or that did not offer vegetarian meals would discriminate against those whose religion prohibits eating meat.  The gravamen of a Title II claim is that the actor intended to discriminate *because of religion*, not because of some characteristic or trait that a plaintiff insists is religiously based.

For example, in *Akiyama v. United States Judo, Inc.*, 181 F. Supp. 2d 1179 (W.D. Wash. 2002), plaintiffs alleged U.S. Judo's requirement that plaintiffs "bow to inanimate objects such as portraits and tatami mats prior to judo matches" violated their religious beliefs.  *Id.* at 1181. The court dismissed the lawsuit because the plaintiffs did not allege U.S. Judo *intended* to discriminate on the basis of religion, stating "there is no claim under Title II where a proprietor or event organizer has set up facially neutral regulations governing the provision of its services,

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

with no indication of discriminatory motive or intent." *Id.* at 1187.  Observing that "[v]irtually any restriction or regulation imposed by a public accommodation could impinge on a person's religious beliefs," the court noted that "the fact that a proprietor has decided to offer his or her services to the public in a way which could impact a religious practice or belief, whether it be by conducting business only on Sundays, by failing to keep a Kosher kitchen, by failing to include fish on the menu during Lent, or by prohibiting smoking, raises no inference of discrimination or other conduct which Congress sought to censure through the enactment of Title II." *Id.* at 1185.[4]

Similarly, in *Jalal v. Lucille Roberts Health Clubs Inc.*, 254 F. Supp. 3d 602 (S.D.N.Y. May 22, 2017), *vacated on settlement*, No. 17-1936, Doc. 33 (2d Cir. Aug. 29, 2017), the plaintiff alleged a gym's policy forbidding patrons from wearing skirts while exercising violated Title II because her religious beliefs required her to do exactly that. *Id.* at 603-05.  The court dismissed the plaintiff's claim because it lacked "facts plausibly supporting a minimal inference of discriminatory motivation." *Id.* at 606.  "Although plaintiff contends that she was treated differently than other [gym] members on the basis of her religion, the factual allegations only suggest that she was treated differently because she insisted on wearing an article of clothing that, according to defendant, was inappropriate gym attire." *Id.* at 606-07; *see also Boyle v. Jerome Country Club*, 883 F. Supp. 1422, 1432 (D. Idaho 1995) (decision to hold golf tournaments on Sunday, which adversely affected members of Church of Jesus Christ of Latter-day Saints, did not violate Title II; "To go beyond the intended language of Title II, and require

---

[4] *Akiyama* acknowledged that a plaintiff could claim a Title II violation if he showed a defendant adopted a facially neutral policy as a proxy or surrogate for intentional discrimination.  181 F. Supp. 2d at 1187 n.6 ("By way of example, if a restauranteur's facially neutral prohibition against hats were shown to be a surrogate for a rule excluding Sikhs, Hasidic Jews, and/or Muslims, a disparate treatment claim under Title II would be appropriate.").  Coral Ridge does not allege facts suggesting AmazonSmile excludes organizations identified by the SPLC as hate groups as a pretext for excluding religious organizations.

Page 14 – AMAZON DEFENDANTS' MOTION TO DISMISS

public facilities to affirmatively accommodate patrons' religious beliefs in a recreational golf tournament setting is not appropriate nor allowed . . . .").

AmazonSmile's requirement that charities meet certain criteria is no different than the gym's dress code in *Jalal* or U.S. Judo's policy in *Akiyama*. Coral Ridge does not allege AmazonSmile discriminated against it "on the grounds … of religion," but that AmazonSmile applied (and adhered to) its published religion-neutral criteria for participation in its program: "Organizations that engage in, support, encourage, or promote intolerance, hate, terrorism, violence, money laundering, or other illegal activities are not eligible to participate." FAC ¶ 44. Further, Coral Ridge admits AmazonSmile "adopts SPLC's judgment" regarding eligible organizations, "with no independent review or standards of its own." *Id.* ¶ 23.[5] In other words, as the First Amended Complaint admits, AmazonSmile did not intentionally discriminate against Coral Ridge on the basis of religion; rather, it "relied on the [information] published by SPLC . . . to exclude [Coral Ridge] from the AmazonSmile program." *Id.* ¶ 85.

Framed within the four-part test to decide Title II claims, Coral Ridge has failed to allege the fourth element, *i.e.*, that other similarly situated entities received different or better treatment. Coral Ridge does not allege that any other religious entities identified as hate groups by SPLC participate in AmazonSmile, or that any non-religious entities identified as hate groups by SPLC participate in AmazonSmile. *See Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1322 (S.D. Fla. 2004) (Title II claim failed where Iranian plaintiffs, who were removed from a cruise after violating terms of their tickets by bringing live animals on the ship, identified no non-Iranian individuals who had violated their tickets and were not removed); *Robinson v. Paragon Foods,*

---

[5] Whether Coral Ridge actually engages in, supports, encourages, or promotes hate or intolerance is irrelevant: Excluding Coral Ridge from AmazonSmile because SPLC allegedly misidentified Coral Ridge as a hate group is not discrimination based on religion.

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main ⋅ (206) 757-7700 fax

*Inc.*, 2006 WL 2661110, at *5 (N.D. Ga. Sept. 15, 2006) (denying plaintiff's motion for summary judgment on Title II claim where fact finder could conclude restaurant applied policy equally to all races).  Based on Coral Ridge's allegations, AmazonSmile excludes all entities identified by the SPLC as hate groups from participation in the AmazonSmile program, regardless of religious affiliation.  Lacking any allegations of discriminatory intent, Coral Ridge's claim fails.

### B. Coral Ridge Has Failed to Allege a Claim for Negligence.

Coral Ridge claims the Amazon Defendants also acted negligently because they discriminated against Coral Ridge by excluding it from the AmazonSmile giving program.  FAC ¶¶ 177-180.  Coral Ridge bases this claim on AmazonSmile's obligation not to discriminate on the basis of religion under Title II.  *Id.* ¶ 179.  This claim, too, fails as a matter of law.

Alabama courts typically apply the doctrine of negligence per se to decide if a plaintiff may assert a claim based on an alleged statutory violation.  This requires a plaintiff to prove "(1) 'the party charged with negligent conduct has violated the statute'; (2) 'the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute'; (3) 'the injury was of a type contemplated by the statute'; and (4) 'the statutory violation proximately caused the injury.'"  *Zatarain v. Swift Transp., Inc.*, 776 F. Supp. 2d 1282, 1290 (M.D. Ala. 2011) (alterations omitted) (quoting *Edwards v. United States*, 552 F. Supp. 635, 638 (M.D. Ala. 1982) (Thompson, J.)).  Coral Ridge has failed to allege at least three of these elements.

First, and most important, Coral Ridge has not alleged that the Amazon Defendants have violated Title II.  Title II requires intentional discrimination in a place of public accommodation.  Coral Ridge has not alleged the Amazon Defendants intentionally discriminated against it, or that

Page 16 – AMAZON DEFENDANTS' MOTION TO DISMISS

the AmazonSmile program is a place of public accommodation.  *Supra* at III.A.  Thus, Coral Ridge has failed to satisfy a critical element of negligence per se: violation of a statute.

A different result would permit any plaintiff to circumvent the requirements of a federal statute by alleging a claim for negligence based on a duty created by that statute—even where, as here, the statute requires intentional conduct.  As one court put it, "negligence per se is not a legally cognizable theory when the underlying statutes prohibit intentional conduct."  *Jackson v. City of Pittsburg*, 2009 WL 1684701, at *2 (N.D. Cal. June 12, 2009).  Thus, courts have rejected efforts to rewrite the Civil Rights Act by asserting negligence.  *See, e.g.*, *Williams v. Ecivres Corp.*, 1995 WL 127182, at *3 (S.D. Tex. March 23, 1995) ("[A]pplication of the Texas common law of negligence per se to a violation of Title VII is improper given that Title VII has its own standards of appropriate conduct governed solely by federal law."); *Houston v. Mile High Adventist Acad.*, 846 F. Supp. 1449, 1457 (D. Colo. 1994) ("[Plaintiff's] attempt to extend Title VII's coverage to include damages for negligent conduct contravenes the language of the statute . . . ."); *Scott v. Thomas & King, Inc.*, 2010 WL 3603836 at *4 (S.D. Ohio Sept. 9, 2010) (no negligence claim where "Title II of the Civil Rights Act provides a duty" but "this duty was the basis for and has already been addressed in Plaintiffs' statutory . . . claims [under Title II]"); *see also Finn v. Warren County*, 768 F.3d 441, 451 (6th Cir. 2014) (no negligence per se claim where plaintiff failed to show intentional conduct required by underlying statute); *In re Genetically Modified Rice Lit.*, 666 F. Supp. 2d 1004, 1022-23 (E.D. Mo. 2009) (same).

In addition, Coral Ridge has not asserted a claim for negligence per se because it has not alleged that Title II protects "a class of persons which is narrower than the general public." *Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1293 (M.D. Ala. 2010) (citing *Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927 (Ala. 2005)).

Page 17 – AMAZON DEFENDANTS' MOTION TO DISMISS

Alabama law does not recognize a claim for negligence per se based on statutes designed to protect the public at large, rather than a subset of the public.  *Id.* (Fair Debt Collection Practices Act could not support negligence per se claim because Act was intended to protect all consumers).  Congress designed Title II to protect the general public.  The statute states that "[a]ll persons" shall be entitled to enjoy public accommodations, and defines public accommodations as those establishments that "serve[] the public."  42 U.S.C. § 2000a(a)-(b); *see also Daniel v. Paul*, 395 U.S. 298, 307-08 (1969) (Title II was enacted to eliminate "the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to *the general public*" (emphasis added) (citation and internal quotation marks omitted)). Because Title II, like a building code and the Fair Debt Collection Practices Act, protects the general public, it cannot form the basis for a negligence per se claim.

Finally, negligence per se is not available when the statute at issue was not intended to protect individuals from private harm.  *Allen Trucking Co. v. Blakely Peanut Co.*, 340 So. 2d 452, 454 (Ala. 1976) (negligence *per se* unavailable where "[t]he statute was designed to prevent damage to public roads not to protect plaintiff or any other individual from private damage"). Title II was not designed to remedy individual injury—but to broadly alleviate invidious discrimination.  *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968).  An action under Title II is "private in form only.  When a plaintiff brings an action under that Title, he cannot recover damages."  *Id.*  In contrast, Coral Ridge expressly seeks damages for negligence. Those damages are not the type of private injury "contemplated by the statute," *Zatarain*, 776 F. Supp. 2d at 1290, making a negligence per se claim unavailable.

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

Coral Ridge cannot transform Title II from a statute prohibiting intentional discrimination into a duty actionable in negligence.  The Court should dismiss Coral Ridge's negligence claim with prejudice.

### C.     Applying Title II of the Civil Rights Act to AmazonSmile Would Infringe AmazonSmile's First Amendment Rights.

Even if Coral Ridge had adequately alleged the elements of a discrimination or negligence claim, the Court should dismiss its claims because applying Title II to AmazonSmile in this manner would infringe AmazonSmile's First Amendment right to free speech.

It is a "bedrock principle that, except in perhaps the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support."  *Harris v. Quinn*, 134 S. Ct. 2618, 2644 (2014); *see also NAACP v. Hunt*, 891 F.2d 1555, 1566 (11th Cir. 1990) ("[T]he government may not 'compel persons to support candidates, parties, ideologies or causes that they are against.'" (citation and internal quotation marks omitted) (dicta)); *Summit Med. Ctr. of Ala., Inc. v. Riley*, 274 F. Supp. 2d 1262, 1273 (M.D. Ala. 2003) ("Just as the First Amendment may prevent the government from prohibiting speech, the Amendment may prevent the government . . . from compelling certain individuals to pay for speech to which they object.") (alteration in original) (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 410 (2001)).

Applying these principles, the Supreme Court has repeatedly struck down laws that require individuals who are not members of a union to subsidize the union's political speech. *See Harris*, 134 S. Ct. at 2639 (striking down law requiring home-based personal care providers to pay union dues); *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 321 (2012) (citing cases) (public employee union could not impose special assessment on members who had opted out of political spending, where the assessment was dedicated to political spending);

Page 19 – AMAZON DEFENDANTS' MOTION TO DISMISS

*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 235-36 (1977) (union could collect fees for collective bargaining activities but not ideological or political activities, as "the Constitution requires . . . that such expenditures be financed from charges, dues, or assessments paid by employees who do not object to advancing those ideas and are not coerced into doing so").

The Court has applied this principle in other contexts, too.  In *United Foods*, for example, the Court considered a regulatory scheme that compelled private funding of a "Mushroom Council" that promoted mushrooms through generic advertising.  533 U.S. at 408.  A large mushroom producer challenged the assessments as a forced subsidy of speech in violation of the First Amendment.  *Id.* at 408-09.  The Court noted that even though the topic of mushroom sales was not of particular interest to most people, the "First Amendment concerns apply here because of the requirement that producers subsidize speech with which they disagree." *Id.* at 410-11; *see also Keller v. State Bar of Cal.*, 496 U.S. 1, 13-14 (1990) (state bar association may not use compelled funds to support ideological speech).

Courts have recognized an exception to this doctrine where there is a "comprehensive regulatory scheme involving a 'mandated association' among those who are required to pay the subsidy."  *Knox*, 567 U.S. at 310 (citation and internal quotation marks omitted).  Thus, for example, in *Glickman v. Wileman Brothers & Elliott, Inc.*, 521 U.S. 457 (1997), the Court upheld a statute that required California tree fruit growers, handlers, and processors to fund generic advertising of California nectarines, plums, and peaches because the challenged assessments were "the logical concomitant of a valid scheme of economic regulation" mandating cooperation among tree fruit growers to maintain a stable market, such as by jointly setting prices.  *United Foods*, 533 U.S. at 412; *cf. Summit Med. Ctr. of Ala., Inc.*, 274 F. Supp. 2d 1262, 1277 (M.D. Ala. 2003) (invalidating law requiring abortion providers to subsidize speech where

Page 20 – AMAZON DEFENDANTS' MOTION TO DISMISS

there was no "overriding associational purpose").  Even in these circumstances, the speaker may

use the compelled subsidy to support only the associational purpose, not ideological or political

speech.  *See Knox*, 567 U.S. at 316; *United Foods*, 533 U.S. at 415-16 (compelled subsidy

violates First Amendment where "the expression respondent is required to support is not

germane to a purpose related to an association independent from the speech itself").

Coral Ridge asks the Court to violate "bedrock" First Amendment principles by forcing

AmazonSmile to subsidize political speech.  Coral Ridge seeks AmazonSmile's charitable

donations to fund the broadcast of its messages.  *See* FAC ¶¶ 39-41 (noting that "fundraising is

important to the continuing operation of [Coral Ridge]" and that "[i]n late 2016, [Coral Ridge's]

leadership became aware of … the AmazonSmile program").  Coral Ridge allegedly is dedicated

to "communicat[ing] the Gospel of Jesus Christ . . . using all available media," *id.* ¶ 33, and its

message includes "religious-based opposition to same-sex marriage and the homosexual

agenda," *id.* ¶ 82.  AmazonSmile allegedly has declined to include Coral Ridge in its program

because SPLC designated it as ineligible for having "engage[d] in, support[ed], encourage[ed],

or promote[ed]" intolerance or hate.  *Id.* ¶¶ 44, 54.  Coral Ridge therefore seeks to force

AmazonSmile to donate money to a group that communicates a political message.

Coral Ridge's claims, if permitted, would infringe AmazonSmile's First Amendment

rights.  Unlike in *Glickman*, no larger regulatory scheme requires AmazonSmile and Coral Ridge

to associate.  *United Foods*, 533 U.S. at 415; *see also Summit Med. Ctr.*, 274 F. Supp. 2d at 1277

("[T]he State has not required abortion providers to be associated with a larger collective

organization that furthers a broad regulatory purpose.").  A required donation from

AmazonSmile would impermissibly force AmazonSmile to "subsidize a political effort." *Knox*,

567 U.S. at 316.  This case does not present the "rarest of circumstances" where such a result is permissible.  The First Amendment bars Coral Ridge's claims.

## IV.  CONCLUSION

For these reasons, the Amazon Defendants respectfully ask this Court to dismiss Coral Ridge's claims against them.  And because the claims suffer legal defects that Coral Ridge cannot cure, the Court should dismiss with prejudice.

DATED this 8th day of November 2017.

By: /s/ Harlan I. Prater, IV
Harlan I. Prater, IV, ASB #7485T62H
Email:  hprater@lightfootlaw.com
R. Ashby Pate, ASB #3130E64P
Email: apate@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama  35203
Telephone:  205.581.0700
Facsimile:  205.581.0799

Ambika K. Doran, Washington State Bar #38237
*pro hac vice application pending*
Email:  ambikadoran@dwt.com
Telephone:  206.622.3150
Facsimile:  206.757.7700
Tim Cunningham, Oregon State Bar #100906
*pro hac vice application pending*
Email: timcunningham@dwt.com
Telephone:  503.241.2300
Facsimile:  503.778.5299
DAVIS WRIGHT TREMAINE, LLC
1201 Third Avenue, Suite 2200
Seattle, Washington  98101

Attorneys for Amazon.com, Inc. and AmazonSmile Foundation

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record have been served with a true and correct copy of the foregoing by the Court's ECF notice at the below address:

Charles E. Hall Jr.
PO Box 7
Dadeville, AL  36853-0007
Telephone: (256) 825-5900
Fax: (256) 825-2030
chall.law@att.net

Attorneys for Plaintiff

David C. Gibbs III
The National Center for Life and Liberty, Inc.
2648 FM 407, Ste. 240
Bartonville, TX  76226
Telephone: (727) 362-3700
Fax: (727) 398-3907
dgibbs@gibbsfirm.com

Attorneys for Plaintiff

Dated this 8th day of November 2017.

/s/ *Harlan I. Prater, IV*
Of Counsel

DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue
Seattle, WA  98101-3045
(206) 622-3150 main · (206) 757-7700 fax