## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **CORAL RIDGE MINISTRIES MEDIA, INC., d/b/a D. JAMES KENNEDY MINISTRIES,** ) ) ) ) | |
| **Plaintiff,** ) ) | **2:17-cv-566-MHT- DAB** |
| **v.** ) ) | |
| **AMAZON.COM, INC.,** *et al.* ) ) | |
| **Defendants.** ) | |

### REPORT AND RECOMMENDATION

Plaintiff Coral Ridge Ministries Media, Inc., d/b/a D. James Kennedy Ministries ("CR Media") filed its Complaint against Amazon.com, Inc. ("Amazon"), the AmazonSmile Foundation ("AmazonSmile") (sometimes collectively "Amazon Defendants"), and the Southern Poverty Law Center ("SPLC") (sometimes collectively with Amazon Defendants, "Defendants") alleging civil rights claims of religious discrimination, violations of the Lanham Act, and defamation. (Doc. 1; Amended Complaint at Doc. 40). SPLC filed a motion to dismiss the Amended Complaint in its entirety. (Doc. 42). The Amazon Defendants also filed a motion to dismiss the Amended Complaint. (Doc. 43). The motions are fully briefed and taken under submission.

## I.    JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Plaintiff's federal causes of action, and the court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Amended Complaint asserts the existence of diversity jurisdiction under 28 U.S.C. § 1332, no basis for challenging this is apparent. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391. On August 4, 2017, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 4). *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.   BACKGROUND AND STATEMENT OF FACTS[1]

**Parties:** CR Media describes itself as a Christian ministry whose fundamental activities include spreading its interpretation of Biblical gospel and fundraising. (Amd. Compl. Doc. 40 at ¶¶ 38-39). The Amazon Defendants, as pertinent to this case, operate a program that allows Amazon customers (who choose to do so) to have 0.5% of their payments go to a fund for the benefit of various nonprofit entities. SPLC is a nonprofit civil rights organization that, among other things, monitors

---

[1] These are the facts for purposes of recommending a ruling on the pending motions to dismiss; they may not be the actual facts and are not based upon evidence in the court's record. They are gleaned exclusively from the allegations in the Amended Complaint.

various groups and publishes on its website a "Hate Map" and a list of groups it has designated as hate groups. At issue in this case is Amazon's use of SPLC's designation of CR Media as a hate group as a basis for excluding it from eligibility to participate in the AmazonSmile charitable program.

## III.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## IV.   CR MEDIA'S CLAIMS

As to the Amazon Defendants, CR Media asserts that they discriminated against CR Media on the basis of religion by excluding it from the AmazonSmile giving program, claiming in Count III a violation of Title II of the Civil Rights Act. (Doc. 40 at ¶¶ at 146-66). CR Media further asserts pursuant to 42 U.S.C. § 2000e and under Alabama common law a negligent violation of the Act in Count IV. (Doc. 40 at ¶¶ 167-82). CR Media seeks relief against SPLC claiming its designation of CR Media as a "hate group" is libel per se (Count I, Doc. 40 at ¶¶ 88-114) and violates the federal Lanham Act, 15 U.S.C. § 1125(a) (Count II, Doc. 40 at ¶¶ 115-45).

CR Media's theory of the case is that the AmazonSmile program is a "place of public accommodation" subject to the anti-discrimination provisions of Title II. (Doc. 40 at ¶¶ 14-19). Further, using its own definition of "hate group," CR Media claims labelling it as such is libel per se, even though SPLC uses its own, different, definition. CR Media also argues the designation is false "commercial speech" subject to the restrictions of the Lanham Act.

The Court will address each count, though not in the order presented in the Amended Complaint.

**Amazon Defendants: Count III—Title II**

Amazon "is an American electronic commerce and cloud computing company, and is the largest Internet-based retailer in the world..." (Doc. 40 at ¶ 5). CR Media alleges that "AmazonSmile is a website operated by Amazon that lets customers enjoy the same wide selection of products, low prices, and convenient shopping features as on Amazon.com." *Id.* ¶ 43 (quoting the "About AmazonSmile" tab located at https://org.amazon.com/). Unlike Amazon, "when customers shop on AmazonSmile (smile.amazon.com), the AmazonSmile Foundation will donate 0.5% of the price of eligible purchases to the charitable organizations selected by customers." *Id.* AmazonSmile does not make donations to any member of the public, or any charity. Rather, it donates to charitable organizations that satisfy certain requirements. First, organizations "must be registered and in good standing with the IRS as a 501(c)(3)" and meet other regulatory criteria. *Id.* at ¶ 44 (quoting the "About AmazonSmile" tab located at https://org.amazon.com/). Second, they "must ... adhere to the AmazonSmile Participation Agreement." *Id.* Finally, "[o]rganizations that engage in, support, encourage, or promote intolerance, hate, terrorism, violence, money laundering, or other illegal activities are not eligible to participate." *Id.* AmazonSmile "relies on the US Office of Foreign Assets Control and the Southern Poverty Law Center to determine which registered charities fall into these groups." *Id.*

Recognizing that applicability of Title II in this case depends on establishing that the AmazonSmile program is a "place of public accommodation" (Doc. 52 at 15), CR Media makes essentially two arguments: first, Amazon's other commercial ventures, which include some physical stores and operations, make this program subject to Title II and, second, Title II should now be interpreted to include essentially any internet activity open to the public. Title II guarantees "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation," without discrimination, including on the basis of religion.  42 U.S.C. § 2000a(a).

Under the statute:

> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce ...
>
>> (1)    any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
>>
>> (2)    any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>>
>> (3)    any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

> (4)    any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b).

CR Media argues at great length that Amazon's other business activities should subject this particular web-based program to Title II requirements. Those arguments, however, do not include any controlling or persuasive authority for such a sweeping proposition. Likewise, other than wishing it were so, CR Media fails to cite any authority for the courts to expand the reach of Title II from physical locales to all internet activity. Accordingly, this claim fails as a matter of law and should be dismissed with prejudice.[2]

### Amazon Defendants: Count IV—Negligence Per Se

CR Media concedes that this claim fails if there is no underlying applicability of Title II. (Doc. 52 at 30). Thus, it, too, should be dismissed with prejudice. Again, based on this disposition, the Court need not and does address the other issues and arguments advanced by the parties.

### Defendant SPLC: Count I—Libel Per Se

---

[2] Because of this recommended disposition, the Court need not reach Amazon's additional arguments that CR Media's exclusion is not religious discrimination and that its own First Amendment rights would be infringed by subjecting this program to CR Media's claims. Nor does the Court reach or decide any issues as to intentionality or strict liability in cases where Title II does apply.

CR Media's first claim against SPLC is for libel per se. For purposes of the claim, CR Media concedes that it is a "public figure" subject to the heightened standard of proof for such entities that claim to have been defamed. (Doc. 51 at 13). Under First Amendment precedent, if a court determines that a plaintiff in a defamation action is "a public official, public figure, or limited-purpose public figure," then the plaintiff must establish by clear and convincing evidence "that the defamatory statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard to whether it was false or not." *Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d 306, 333 (Ala. 2007) (citing *New York Times, Co. v. Sullivan*, 376 U.S. 254, 280 (1964)); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) (some internal quotation marks omitted). A defendant acts with "reckless disregard" if, at the time of publication it "'entertained *serious doubts* as to the truth of [its] publication' or acted 'with a *high degree of awareness* of ... [its] probable falsity.'" *McFarlane v. Sheridan Square Press, Inc.,* 91 F.3d 1501, 1508 (D.C. Cir. 1996) (*quoting St. Amant v. Thompson,* 390 U.S. 727, 731 (1968)).

The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant. *St. Amant,* 390 U.S. at 731. Rather, courts ask whether the defendant, instead of acting in good faith, *actually* entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false. *Id.*; *Silvester v. Am. Broad. Cos. Inc.*, 839 F.2d 1491, 1493 (11th Cir.

9

1988). Under this standard, even "[t]he most repulsive speech enjoys immunity provided it falls short of" meeting the actual malice standard. *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (internal quotation marks/citations omitted).

The essence of the claim is that SPLC's designation of CR Media as a "hate group" is defamatory and false. The *sine qua non* of CR Media's effort to allege "actual malice" by SPLC is imposition and use of a definition of "hate group" different from that actually used by SPLC itself as part of the designation.[3] Unless the meaning of the language used by a libel defendant is beyond dispute, a libel *plaintiff* may not rely on its chosen meaning to establish actual malice by the *defendant,* particularly where the defendant has set forth the meaning of the language and the basis for that meaning. In argument, CR Media posits various definitions of "hate group" used by various groups and organizations for their particular purposes. The existence of these various definitions (with their differences, large and small) and the absence of any usage established by statute or other controlling authority, certainly gives entities such as SPLC the right to specify the meaning *they* give to the words as *they* use them. SPLC is not required to use "hate group" definitions

---

[3] CR Media makes no substantial argument that SPLC's designation, based on its own definition of "hate group," would be actionable.

used by others, and its state of mind, for purposes of determining "actual malice," cannot be judged based on those other definitions.

CR Media advances other alleged circumstances, *e.g.,* the biblical source for its own credo, CR Media's self-description, and the history of discrimination against LGBT individuals and activities, as somehow showing SPLC acted with actual malice. The Court is at a loss to discern any legal or logical connection between these alleged circumstances and SPLC's state of mind regarding actual malice. CR Media also argues that SPLC's so-called "agenda" of opposing hate groups and the extent of its messaging somehow speak to its ill will. To the contrary, these observations, to the extent they are pleaded, tend to demonstrate SPLC's sincerity and good faith.

CR Media has failed to allege facts or circumstances that could suggest that SPLC's designation of CR Media as a hate group (as SPLC defined the term) was made with actual knowledge of the falsity or in reckless disregard of its truth or falsity. Accordingly, Count I of the Amended Complaint should be dismissed with prejudice.[4]

**Count II—Lanham Act**

---

[4] SPLC forcefully advances additional arguments based on its First Amendment right to publish opinions. As with Amazon's additional arguments, the Court need not and does not address those issues.

The Lanham Act at 15 U.S.C. § 1125 (a)(1)(B) prohibits false advertising in connection with "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). The Eleventh Circuit defines "commercial advertising or promotion" for Lanham Act purposes as encompassing four elements: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations ... must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry. *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (internal quotation marks and brackets omitted). The first element, "commercial speech," is a threshold requirement for liability under the Lanham Act false advertising claim. *See Porous Media Corp. v. Pall Corp.,* 173 F.3d 1109, 1120 (8th Cir. 1999). Unless CR Media can plausibly prevail on this fundamental issue, there can be no claim under the Lanham Act against SPLC.

The concept of commercial speech under the Lanham Act mirrors the commercial speech doctrine under the First Amendment. *See Proctor & Gamble Co. v. Haugen,* 222 F.3d 1262, 1274 (10th Cir. 2000); *see also Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1323 (11th Cir. 2010). The "core notion" of commercial speech encompasses "speech that proposes a commercial transaction." *Edward Lewis Tobinick, MD v. Novella,* 848 F.3d 935, 950 (11th Cir. 2017). In fact, commercial

speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

The present action is not the only case in which SPLC's "hate group" designation has been alleged to be commercial speech to support a Lanham Act claim. In *Liberty Counsel, Inc. v. GuideStar USA, Inc.,* No. 4:17-cv-71 (E.D. Va. Jan. 23, 2018), the Court succinctly held that use of SPLC's hate speech notation was not commercial speech and dismissed the Lanham Act claim in that case with prejudice. Judge Jackson reasoned that characterization of one organization by another should be analyzed under First Amendment principles, not those of the Lanham Act. Slip Opinion at 8. "The notation simply states the SPLC's review of Plaintiff's organization, and that review labels Plaintiff's organization as a 'hate group.' Defendant's notation does not request or propose a sale of its products or services." *Id.* Thus, the notation is an informative statement rather than commercial speech.

> It is not sufficient that Plaintiff alleges that Defendant advertised its subscription on the website because the notation itself did not propose a commercial transaction or imply from the SPLC notation that the donors should buy its subscription. Pursuant to *Radiance Found.,* [786 F.3d 316 (4th Cir. 2015)] the Court finds that SPLC's notation was not an advertisement, did not offer the reader anything for sale, and did not mention Plaintiffs services or Defendant's services. See *id.* at 331-32. A reasonable person on Defendant's website, reading SPLC's notation, is unlikely to read the notation as advertising a service or proposing a transaction of any kind. *Id.*

13

> Therefore, the Court finds that Defendant's statement is not commercial speech.

*Id.,* at 9.

The reasoning and result in *Liberty Counsel* are persuasive and well-supported. SPLC's designation of CR Media as a hate group is simply not the kind of speech encompassed by the language or intent of the Lanham Act. CR Media's arguments to the contrary, while creative, are far-fetched. The disagreements between these parties are deeply held and societally important. But they are not part of a commercial or advertising dispute and are not subject to resolution under the Lanham Act. Count II should also be dismissed with prejudice. Again, there are additional issues raised by the parties that the Court does decide due to the complete inapplicability of the basis for CR Media's claim.

## V.    RECOMMENDATION AND CONCLUSION

Accordingly, for the reasons stated, it is **RESPECTFULLY RECOMMENDED** that the SPLC's motion to dismiss (Doc. 42) and the Amazon Defendants' motion to dismiss (Doc. 43) be **GRANTED** and that the case be dismissed with prejudice.

It is **ORDERED** that the parties shall file any objections to this Recommendation on or before **March 8, 2018.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be

considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 21st day of February 2018.


David A. Baker
United States Magistrate Judge