**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CORAL RIDGE MINISTRIES MEDIA, INC.** | ) | |
| **d/b/a D. James Kennedy Ministries** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:17-cv-566-MHT-DAB** |
| **AMAZON.COM, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**RESPONSE TO PLAINTIFF'S OBJECTIONS TO**
**THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

COMES NOW Defendant Southern Poverty Law Center, Inc., (the SPLC) and files this response to the Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (R&R), Doc. 58.  Coral Ridge Ministries Media, Inc.'s (CRM Media's) objections are not well-founded as to the claims pled against the SPLC.

In the Plaintiff's first objection to the R&R as to its claims against the SPLC, CRM Media contends the Magistrate Judge disregarded the correct legal standard regarding what determines the actual meaning of defamatory language.  Doc. 58 at 2.  Specifically, CRM Media argues that the R&R, erroneously and without citation to legal authority, held that "a libel defendant's words must be 'beyond dispute' – *i.e.*, a meaning 'established by statute or other controlling authority' … before the defendant can possibly have acted with actual malice."  Doc. 58 at 6.  CRM Media takes this quote completely out of context.  The Magistrate Judge's statement in full is quite different:

> Unless the meaning of the language used by a libel defendant is beyond dispute, a libel *plaintiff* may not rely on its own chosen meaning to establish actual malice by the *defendant*, particularly where the defendant has set forth the meaning of the language and the basis for that meaning.

Doc. 57 at 10 (emphasis in original).

In other words, where, as here, different interest groups have defined the term at issue differently and there is no official or statutory definition of the term, the mere fact that the defendant chooses a definition different from the plaintiff's cannot establish actual malice. This holding is consistent with the actual malice standard set out at great length in the R&R. *See* Doc. 57 at 9-10 (actual malice requires proof that the defendant entertained serious doubts as to the truth of the publication or acted with a high degree of awareness of its probably falsity; test is not objective; defendant itself must entertain serious doubts as to statement's veracity).

CRM Media also argues that "whatever SPLC might have subjectively meant in declaring or publishing the allegedly defamatory words (*i.e.,* the Ministry is a 'hate group') is not dispositive in light of the commonly understood meaning of the words used." Doc. 58 at 2 (internal quotation marks largely omitted). Unfortunately for CRM Media, it failed to identify any source that established the existence of an official, commonly-accepted definition of the words "hate group." *See* Doc. 54 at 3-6 (the SPLC's Reply Brief discussing the various hate group "definitions" proffered by CRM Media). As stated in the R&R, CRM Media merely "posit[ed] various definitions of 'hate group' used by various groups and organizations" but with an "absence of any usage established by statute or other controlling authority." Doc. 57 at 10.

In such a case, and where the SPLC without question placed its definition of "hate group" on the Hate Map website at issue in this case, the SPLC's statement cannot be said to have been made with actual malice merely because the SPLC's definition differs from CRM Media's.

The only substantive argument in CRM Media's objection on this point is its "child-abusing organization" hypothetical. *See* Doc. 58 at 8. As explained in the SPLC's Reply Brief, Doc. 54 at 10 n.7, if, in the hypothetical, CRM Media's proffered definition of "child-abusing

organization" (*i.e.,* a group that does not tell children about Jesus) were disclosed in the publication of the information at issue, there would be no basis for finding actual malice.[1]

In its second objection related to claims against the SPLC, CRM Media argues that the Magistrate Judge concluded "that the Ministry presented no 'legal or logical connection' between the First Amended Complaint and SPLC's state of mind regarding actual malice." Doc. 58 at 2. This is a gross misstatement of the Magistrate Judge's language.  The R&R reads in pertinent part:

> CR Media advances other alleged circumstances, *e.g.*, the biblical source for its own credo, CR Media's self-description, and the history of discrimination against LGBT individuals and activities, as somehow showing SPLC acted with actual malice.  The Court is at a loss to discern any legal or logical connection between these alleged circumstances and SPLC's state of mind regarding actual malice.

Doc. 57 at 11. The SPLC defines hate groups as organizations "that have beliefs or practices that attack or malign an entire class of people, typically for their immutable characteristics."  *See* Doc. 40 ¶ 59 (quoting the SPLC definition of hate group on the SPLC website).  With that definition in mind, one could paraphrase the Magistrate Judge holding as follows: CRM Media's proffered reasons for maligning LGBT people are not relevant to whether the SPLC believed that D. James Kennedy Ministries did in fact malign LGBT people.  In other words, the bases for CRM Media/D. James Kennedy Ministries' beliefs and actions (biblical verses, their credo, the history of anti-LGBT sentiment, etc.) did not provide plausible support for the claim that the SPLC acted with actual malice.

CRM Media also objects to the R&R by alleging that it failed to address both the extent of publication and CRM Media's argument that the SPLC's statement was "so inherently improbable that only a reckless person would have circulated it."  Doc. 58 at 10.  CRM Media argues both are

---

[1]And, of course, there is a further distinction.  Child abuse (as CRM Media acknowledges) has a variety of fixed statutory definitions, whereas the general concept of "hate" or "hate group" does not.  Thus, the analogy is actually not an apt one.

bases for finding actual malice.  The extent of publication does not appear to be a factor in the federal constitutional actual malice analysis.  Nor has CRM Media cited any law to suggest that it is.  And the SPLC's conclusion that CRM Media satisfied its definition of "hate group" is not "inherently improbable."  This is evidenced by CRM Media's stated positions that LGBT people and their sexuality are "lawless", "vile", and "shameful", among other things.  Doc. 40 ¶ 174.

The third objection to the R&R as it relates to the claims against the SPLC is that the Magistrate Judge "[i]ncorrectly us[ed] the content of the SPLC's website as the basis for determining commercial speech does not exist."  Doc. 58 at 2.  CRM Media claims that it "specifically disavowed any claims based on content of SPLC's website."  Doc. 58 at 2.  The problem with this position is that CRM Media never alleged any facts showing the use of the term "hate group" in connection with D. James Kennedy Ministries[2] by the SPLC anywhere except on the SPLC website.  *See, e.g.,* Doc. 40 ¶ 21 (vaguely asserting that the SPLC "integrates the hate group designations into many of its goods and services"); ¶ 29 (same general allegation); ¶ 28 ("on information and belief, SPLC has used the hate group designation to raise money…").

Without pure speculation in clear violation of the holdings of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and *Ashcroft v. Ibal*, 556 U.S. 662, 678 (2009), the Magistrate Judge had no plausible, specific factual allegation in connection with which he could apply the commercial speech analysis except the specific allegation related to the content of the Hate Map on the SPLC website. Given that CRM Media very clearly concedes that the reference to D. James Kennedy Ministries on the SPLC website is *not* commercial speech, it is beyond dispute that the R&R should be adopted on this point.

---

[2] It is the trademarked name D. James Kennedy Ministries rather than Coral Ridge Ministries Media, Inc., that is listed on the SPLC Hate Map.

CRM Media's fourth objection as to claims against the SPLC is that the Magistrate Judge relied too heavily on *Liberty Counsel v. GuideStar USA, Inc.*, No. 17-cv00071-RAJ-DEM (E.D. Va. Jan. 23, 2018), in concluding that the hate group designation was not commercial speech.  In connection with this objection, CRM Media argues that the Judge failed to determine whether: "SPLC's fundraising, advertising, and promotional speech constituted commercial speech."

The gist of this objection is similar to the previous one, and it easily extinguished.  In short, in *Liberty Counsel*, the District Court focused on the fact the hate group designation was published on a website that did not, as the R&R quoted, "'request or propose a sale of [the entity's] products or services.'"  Doc. 57 at 13 (citing *Liberty Counsel*, *supra*, Slip Opn. at 8).  The Magistrate Judge in this case cited *Liberty Counsel* as concluding that the hate group "notation simply states the SPLC's review of the Plaintiff's organization."

These are also undisputed facts in this case – *i.e.*, the Hate Map website at issue here was not alleged to have requested or proposed a sale of the SPLC's products or services and it was merely a statement of the SPLC's review of the Plaintiff's organization.  CRM Media does not appear to take issue with either point as applied to the Hate Map website.  And reviews are exactly the kind of thing excluded from the definition of commercial speech and from Lanham Act coverage. *See, e.g.*, 136 Cong. Rec. H1216-17 (daily ed. April 13, 1989) (quoted in pertinent part in Doc. 42 at 22).

What CRM Media appears to take issue with is the Magistrate Judge's failure to address its vague and unsupported allegations about "fundraising" or "advertising."  *See* Doc. 58 at 2. However, as noted earlier in this brief, the only plausible, factually specific allegation in the Complaint regarding any reference by the SPLC to D. James Kennedy Ministries as a hate group is in connection with the Hate Map on the SPLC's website, which CRM Media concedes is not

commercial speech as evidenced by its absolute disavowal of any reliance on the website as the basis for its claim here.

In connection with this objection, CRM Media also argues that "'identifying commercial speech is a fact-driven analysis,'" citing *Handsome Brook Farm, LLC, v. Humane Farm Animal Care, Inc.*, 193 F. Supp. 3d 556, 566-67 (E.D. Va. 2016).  In a footnote, CRM Media sets out the alleged facts that the Magistrate Judge should have considered: "investigative reports, training services and materials, key intelligence, and expert analysis (SPLC's goods and services)" which CRM Media alleges "involve SPLC's hate-group designation of the Ministry."  Doc. 58 at 12 n.5 (internal quotation marks omitted).  While CRM Media cites over a dozen paragraphs in which it allegedly set out these "facts," even assuming the listed items are services the SPLC provides, not one of the listed paragraphs makes any specific, plausible factual allegation that the SPLC provided any service related to its review of D. James Kennedy Ministries.  Nor do these paragraphs allege how the SPLC's review of D. James Kennedy Ministries on the Hate Map is related to any alleged commercial transaction.

Fifth, and strangely, CRM Media takes issue with the Magistrate Judge's failure "to analyze any of the other Lanham Act arguments made by *any* of the parties."  Doc. 58 at 2 (emphasis in original).  The R&R correctly stated that the Lanham Act commercial advertising or promotion claim, 15 U.S.C. § 1125(a)(1)(B), would only be actionable if a Plaintiff could plead the threshold "commercial speech" requirement.  Doc. 57 at 12 (citing *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1120 (8th Cir. 1999)).   Having found no basis in the Amended Complaint for concluding that the "hate group" designation on the SPLC's website was commercial speech, the Magistrate Judge had no reason to conduct any further analysis.

CRM Media's sixth and final objection is that the R&R "fail[ed] to analyze the Ministry's false association claim" brought pursuant to 15 U.S.C. § 1125(a)(1)(A).  The claim is so weak and frankly bizarre that one can hardly take it seriously[3], but CRM Media does appear to be correct that the R&R does not mention the 15 U.S.C. § 1125(a)(1)(A) claim.

The elements of a false-association claim are clear and include the requirement that a plaintiff prove "the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services."  *Park LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3rd Cir. 2017) (internal quotation marks omitted).  The Eleventh Circuit states this element as requiring proof "that the 'defendant made unauthorized use [of a mark or name] 'such that consumers were likely to confuse'" the plaintiff's and defendant's goods or services. *Custom Mfg. & Eng'g, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

Thus, for CRM Media to prevail it must plausibly allege that the SPLC used the trademark at issue (D. James Kennedy Ministries) in connection with the promotion of the *SPLC's* goods or services in a way that would create confusion as to the origin of the SPLC's goods or services.  CRM Media has made no such allegation, nor could it.  CRM Media alleges merely that the hate group designation might confuse consumers about the nature of *CRM Media's* goods and services.  *See* Doc. 40 ¶ 125 (alleging that the use of the trademark is "likely to cause the public and potential supporters of the Ministry to be confused … into believing that the Ministry is a hate group …").

The language upon which CRM Media relies from *Geisel v. Poynter Prods.*, 283 F. Supp. 261, 267 (D.N.Y.1968), and *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd*, 467 F. Supp. 366, 376 (S.D.N.Y. 1979), is taken completely out of context.  CRM Media appears to be

---

[3]The continued effort by CRM Media to push this claim could be sanctionable under the Lanham Act's attorney fees provisions.  *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

fixated on the phrase in *Pussycat Cinema* that "the statute is … directed also to any false or misleading description regarding the character or nature of the goods or services," 467 F. Supp. at 374, and from *Geisel*, that "[r]elief may be granted if the actions of the defendants creates a false impression …. The plaintiff is not required to prove actual palming off[.]" *Geisel*, 283 F. Supp. at 267.

In each of these aged and out-of-circuit district-court cases, the issue was whether the defendant may have confused the purchaser as to the origin of the defendant's product or as to whether the defendant's product had the plaintiff's endorsement.  In *Geisel*, for example, the words following immediately after those relied upon by CRM Media are:  "A showing of the likelihood of customer confusion <u>as to the source</u> of <u>the goods</u> is sufficient."  *Id.* (emphasis added).  There the issue was whether dolls created by the defendant had been made to appear as though they were produced or approved by Geisel.  In *Pussycat Cinema*, the issue was whether the viewers of a pornographic film might have been led to believe that the Dallas Cowboys Cheerleaders organization sponsored or endorsed the film.[4]

Neither decision can support the existence of a cause of action in this case where there has been no plausible allegation that SPLC's designation of D. James Kennedy Ministries as a hate group would cause confusion regarding the source of anyone's goods or services, or would cause confusion between the SPLC and D. James Kennedy Ministries.  The facts alleged here simply do not come close to supporting a false-association Lanham Act claim.

---

[4]*See* 467 F. Supp. at 376 (stating "[i]t is not difficult to conceive of the possibility that the use of plaintiff's trademarks… would subtly suggest that the movie is sponsored by plaintiff, or that plaintiff's cheerleaders are performing in the movie" and finding it "creates a likelihood of confusing members of the public as to the sponsorship of the movie…").

## CONCLUSION

In conclusion, the R&R is due to be adopted in full, or, in the alternative, to be sent back to the Magistrate Judge with directions to amend it to include a report and recommendation as to the Lanham Act false-association claim under 15 U.S.C. § 1125(a)(1)(A).  Alternatively, this Court could adopt the R&R in full and also grant the SPLC's motion to dismiss as to the false-association claim based on the arguments set out herein or in the motion-to-dismiss briefing.  *See* Doc. 42 at 28-29.

Respectfully submitted this 22nd day of March, 2018.

s/ Shannon Holliday
Shannon Holliday [ASB-5440-Y77S]
Robert D. Segall [ASB-7354-E68R]
COPELAND, FRANCO, SCREWS & GILL, P.A.
P.O. Box 347
Montgomery, AL 36101-0347
Email:  holliday@copelandfranco.com
Email:  segall@copelandfranco.com
**Attorneys for Defendant Southern Poverty Law Center**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Charles E. Hall, Jr.
Post Office Box 7
Dadeville, AL  36853-0007
Email:  chall.law@att.net

David C. Gibbs, III
Gibbs Law Firm PA
2648 FM 407, Suite 240
Bartonville, TX  76226
Email: dgibbs@gibbsfirm.com

Harlan I. Prater, IV
R. Ashby Pate
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL  35203-3200
Email:  hprater@lightfootlaw.com
Email:  apate@lightfootlaw.com

s/Shannon L. Holliday
Of Counsel